SWIFT & COMPANY ET AL. *v.* UNITED STATES.

CERTIFICATE FROM THE COURT OF APPEALS OF THE DISTRICT
OF COLUMBIA.

No. 181.   Argued October 3, 4, 1927; reargued January 3, 4, 1928.—
Decided March 19, 1928.

1. Where a consent decree, entered in a suit brought by the Government under the Anti-Trust Act, provided for entertaining at any time thereafter any application which the parties might make in respect to it, motions to vacate it made by defendants four years later in response to petitions of intervention and entitled in the suit, were part of the original cause. P. 322.

2. An appeal from an order of the Supreme Court of the District of Columbia overruling defendant's motion to vacate a decree in a suit by the Government under the Anti-Trust Act, does not lie to the Court of Appeals of the District, and where erroneously taken there from an order entered before the effective date of the Jurisdictional Act of February 13, 1925, should be transferred by that court, as a circuit court of appeals, to this Court. P. 323.

3. Where questions were certified to this Court in a case appealed to the Court of Appeals of the District of Columbia which, under the Expediting Act of 1903, should have been appealed directly here, this Court, by ordering up the entire record, acquired jurisdiction as fully as if a formal transfer had been made. P. 323.

4. The Supreme Court of the District of Columbia has power to administer relief under the Anti-Trust Act (*Federal Trade Comm.* v. *Klesner,* 274 U. S. 145); and where the suit is one under § 4, which can only be brought in equity, it is properly brought in that court sitting in Equity, and need not be addressed to it at special term as the "District Court of the United States." P. 324.

5. In a suit by the Government to restrain alleged violations of the Anti-Trust Act, defendants denied material allegations of the bill, but consented to the entry without any proof or finding of facts, of a decree granting comprehensive relief under the bill but declaring that defendants maintained the truth of their answers, asserted their innocence, and consented to the entry of the decree upon condition that their consent should not constitute an admission, nor the decree an adjudication, that they, or any of them, had violated any law of the United States. *Held:*

(1) That a motion by the defendants to vacate the consent decree could not be sustained upon the ground that there was no case

or controversy to afford jurisdiction, since (a) an injunction may issue to prevent future wrongs though no right has yet been violated; and (b) because, if the court, having jurisdiction of the subject and the parties, erred in deciding that there was a controversy, the error could have been reached only by bill of review or appeal. P. 325.

(2) A motion to vacate would not lie upon the ground that the facts necessary to constitute a violation conferring jurisdiction under the Anti-Trust Act were neither admitted. nor proved, since an injunction limited to future acts might be based upon allegations of the bill not specifically denied. Error in that regard would not go to the jurisdiction, and besides being of a kind reviewable only by appeal, was in this case waived by consent to the decree. P. 327.

(3) Prohibitions in an injunction decree, which standing alone are too general, are to be read with other parts of the decree and with allegations of the bill, for the purpose of removing uncertainties. P. 327.

(4) Provisions of the consent decree cannot be assailed by a motion to vacate upon the ground that they enjoin future conduct in terms too vague and general. P. 327.

(5) Nor upon the ground that defendants are debarred in the future from lawful lines of business not connected by any finding of facts with the conspiracy charged; since consent to entry of the decree without such findings left power in the court to construe the pleadings and therein to find circumstances of danger justifying such prohibitions. P. 328.

(6) Even if the consent decree contain prohibitions which are contrary to the Anti-Trust Act and the common law, and are grossly erroneous, it is not therefore void. P. 330.

(7) If the court, in addition to enjoining the acts that were admittedly interstate, enjoined some that were wholly intrastate and in no way related to the conspiracy to obstruct interstate commerce, it erred; and had the defendants not waived such error by their consent, they might have had it corrected on appeal. But the error, if any, does not go to the jurisdiction of the court. P. 330.

(8) The consent of the Attorney General to the decree, whether correctly or erroneously given, was within his official discretion. P. 331.

Supreme Court of the District of Columbia, affirmed.

REVIEW of orders of the Supreme Court of the District of Columbia, overruling motions of Swift & Company and other defendants seeking to vacate a decree which had been entered by consent in a suit brought by the Government under the Anti-Trust Law.  The matter went first, by appeal, to the Court of Appeals of the District of Columbia and became lodged in this Court by an order calling up the entire record after that court had certified certain questions concerning it.

*Mr. Charles E. Hughes,* with whom *Messrs. Charles A. Douglas, Conrad H. Syme, Henry Veeder,* and *Charles J. Faulkner, Jr.,* were on the brief, for Swift & Company et al.

The motions to vacate are independent proceedings. *Stevirmac Co.* v. *Dittman,* 245 U. S. 210.  The order of May 1, 1925, of the Supreme Court of the District of Columbia is final.  This appeal was properly prosecuted to the Court of Appeals of the District of Columbia.

The decree contains no provisions which constitute a determination that the defendants had committed any acts which constituted a violation of law.  Under what possible theory could any court without having found that there had ever been a violation of the anti-trust laws or any attempt to do the acts forbidden by the statute have enjoined the defendants, corporate or individual, or both, from pursuing the lawful occupations of life. This Court has held that no such thing could legally be done.  *United States* v. *U. S. Steel Corp.,* 251 U. S. 417; *United States* v. *Coffee Exchange,* 263 U. S. 611; *Hamburg-American* case, 239 U. S. 475.

Can the Government possibly go into court with no violation of law, with no contract, combination or conspiracy in restraint of trade existing, with no monoply or attempt to monopolize existing, and with the stipula-

tion that none of these things should be found or considered to exist, and secure an injunction to prevent corporations and individuals from exercising their inherent right in present and future to pursue the lawful occupation of buying, selling and transporting in interstate and foreign commerce, and from engaging in vocations which were not even the subject of such commerce, as was done in this case, upon the mere "expectation" that the law, which had not been violated or attempted to be violated, might be violated in the future?

The theory that the Government can legally control, regulate and restrain the business activities of its citizens beyond the limits fixed by law, through the means of decrees of the federal courts secured by consent of the parties, amounts to the proposition that consent of the parties can confer jurisdiction upon the federal courts, and is fraught with serious consequences.

The decree is void for want of factual basis. The jurisdictional facts necessary to give an equity court jurisdiction were not established. *United States* v. *Swift,* 188 Fed. 92; *United States* v. *Patterson,* 201 Fed. 697; *Palmer* v. *Fleming,* 1 App. D. C. 528; *United States* v. *Reading Co.,* 183 Fed. 427. See also *United States* v. *Whiting,* 212 Fed. 466; *Alldredge* v. *Aldredge,* 151 Pac. 311; 15 R. C. L. 896.

Consent cannot confer jurisdiction to act outside the judicial power. *Swift & Co.* v. *Memphis Cold Storage Co.,* 158 S. W. 480; *T. St. L. & N. O. R. R. Co.* v. *R. R. Co.,* 208 Ill. 623; *Pittsburgh, C. & St. L. Ry. Co.* v. *Ramsey,* 22 Wall. 322.

Proof or admission of facts supporting the charges or attempted charges in the petition which were specifically denied in the answers was not made, and cannot be presumed in the face of the conditions (expressed in the stipulation and in the decree itself) upon which the parties consented that the decree should be entered. Every

judgment or decree must be supported by facts necessary to its validity. *Wood* v. *Cox*, 113 Atl. 501; *Black* v. *Keiley*, 23 N. J. Eq. 538; *Grob* v. *Cushman*, 45 Ill. 119.

There was no proof of any threatened violations. All allegations of threatened violations were denied. The stipulation is the only basis of the decree and the decree negatives any determination of any violation. What is a threatened violation of the Sherman Act? It is nothing more nor less than an attempt; and attempts to do the acts forbidden by the statute are themselves violations of the law. Facts disclosing such attempts must be charged and proved or admitted, and must be adjudicated to be violations of law before the court can enter its judgment. *United States* v. *Coffee Exchange*, 263 U. S. 611; *United States* v. *U. S. Steel Corp'n*, 251 U. S. 417; *United States* v. *Hamburg Amerikanische Co.*, 239 U. S. 466; *United States* v. *Quaker Oats Co.*, 232 Fed. 499; *In re Greene*, 52 Fed. 104.

The injunction orders contained in paragraphs 1 and 9 are void, being merely general injunctions against all possible breaches of the Anti-Trust Laws, and beyond the power of the court. *Swift & Co.* v. *United States*, 196 U. S. 375.

The injunction orders contained in paragraphs 2 to 8, inclusive, are void because they enjoin the defendants not merely from engaging in unlawful acts, but also from severally following lawful occupations in a lawful manner and are, therefore, a usurpation by the judicial branch of the Government of the function of the legislative branch. *United States* v. *Coffee Exchange*, 263 U. S. 611; *Daniel* v. *Portland Gold Mining Co.*, 202 Fed. 637; *American Federation of Labor* v. *Buck's Stove Co.*, 33 App. D. C. 83; 219 U. S. 58.

See also *Geddes* v. *Anaconda Copper Co.*, 254 U. S. 590, where it is said: " It is now the settled law that the remedies provided by the Anti-Trust Act of July 2,

1890, . . . for enforcing the rights created by it are exclusive."

No department of the Government may invade the province of the others. *Massachusetts* v. *Mellon,* 262 U. S. 447.

The decree is void because it is not confined to interstate commerce, but enjoins defendants from doing acts and things which are exclusively intrastate commerce or which may be limited to intrastate commerce. *Kidd* v. *Pearson,* 128 U. S. 1; *Hammer* v. *Dagenhart,* 247 U. S. 251; *Delaware, L. & W. R. Co.* v. *Yurkonis,* 220 Fed. 429.

The decree is void because by it defendants are obliged to go out of certain businesses and not to enter others in the United States, forever, which is violative of both the common law and the Anti-Trust statutes.

The decree is void because there was no " case " or " controversy " before the court within the meaning of § 2 of Article III of the Constitution. *Osborn* v. *United States Bank,* 9 Wheat. 737; *Smith* v. *Adams,* 130 U. S. 167; Story on the Constitution, 4th Ed., § 1646; *In re Pacific Ry. Comm.,* 32 Fed. 241.

It is elementary that " the controversy, in a suit, is the one actually presented by the pleadings, and not what it might have been." *Vulcan Detinning Co.* v. *American Can Co.,* 130 Fed. 635.

Consent could not confer jurisdiction where there was no " case " or " controversy," within the meaning of the Federal Constitution. *Little* v. *Bowers,* 134 U. S. 547; *California* v. *San Pablo R. Co.,* 149 U. S. 308; *Muskrat* v. *United States,* 219 U. S. 346; *Torrence* v. *Shedd,* 144 U. S. 527; *Liberty Warehouse Co.* v. *Grannis,* 273 U. S. 70.

The Attorney General was without power to consent to the decree. The Attorney General has not only no authority to impose decrees upon citizens which are not authorized by law, but it is the duty of the courts to set

aside any such decree, imposed either by consent or otherwise. Even where a court has jurisdiction over the parties and the subject-matter, yet if it makes a decree which transcends the limits of its authority, such decree is not merely erroneous, but void. Freeman on Judgments, 4th Ed. § 116. See also Black on Judgments, 2d Ed. § 171; *Windsor* v. *McVeigh,* 93 U. S. 274; *United States* v. *Walker,* 109 U. S. 258; *United States* v. *American Tobacco Co.,* 191 Fed. 371; *Reynolds* v. *Stockton,* 140 U. S. 254; 33 C. J. 1076; 15 R. C. L. "Judgments," §§ 316 and 144; 2 High on Injunctions, 4th Ed. Par. 1425; *Pyeatt* v. *Estes,* 4 A. L. R. 1570; *Sache* v. *Gillette,* 11 L. R. A. (N. S.) 803; *Glover* v. *Brown,* 184 Pac. 649; *Munday* v. *Vail,* 43 N. J. L., 418; Black on Judgments, 2d Ed. § 242; *Johnson* v. *McKinnon,* 13 L. R. A. (N. S.) 874; *American Mortgage Co.* v. *Thomas,* 47 Fed. 550.

A motion to vacate filed in the court which rendered the decree is the proper procedure to have a void decree vacated. 21 C. J. 718. See also *Grant* v. *Harrell,* 109 N. C. 78; *Aronson* v. *Sire,* 85 App. Div. (N. Y.) 607; Freeman on Judgments, 5th Ed., §§ 228, 273, 307 and 382.

*Assistant to the Attorney General Donovan,* with whom *Solictor General Mitchell* and *Mr. H. B. Teegarden,* Special Assistant to the Attorney General, were on the brief, for the United States.

It is suggested that the judgment refusing to grant the motion to vacate the decree was a decree in a suit under the Sherman Act, within the meaning of the Expediting Act, and the appeal should have been direct to this Court; that the Act providing for transfer of cases from Circuit Courts of Appeals, literally construed, did not allow transfer from the Court of Appeals of the District of Columbia, but liberally construed did; that unless this Court concludes that appeal was properly taken to the

Court of Appeals of the District, or, if not so taken, that the cause was thereupon transferable to this Court, it has not, by ordering the whole record up after certificate, acquired jurisdiction to consider the merits.

The Government admits the full force of the clause in the decree's preamble as a refusal to adjudicate any past violations of law, but answers that it does not touch the factual basis necessary to support the decree; the decree rests upon a threatened or impending future violation of the Anti-Trust Law; the finding of a state of facts to support it is conclusively presumed by the entry of the decree upon the parties' consents, and is not denied by any language of the decree. The Government denies that any of the provisions of the decree are beyond the jurisdictional power of the court to enter. The bill placed before the court a controversy upon a subject matter within its jurisdiction; the parties voluntarily submitted themselves to the jurisdiction; the relief granted was of a nature (injunctive) within the court's equity powers to grant, and its provisions are all within the scope of the case made by the bill; the parties consented to the decree, thereby adopting its language as their own, conceding its appropriateness to the situation complained of, and waiving any errors of substance or form.

Mr. *William C. Breed,* with whom *Messrs. Sumner Ford* and *Edward A. Craighill, Jr.,* were on the brief, for the National Wholesale Grocers Association.

Mr. *Edgar Watkins,* with whom *Mr. Mac Asbill* was on the brief, for the American Wholesale Grocers Association at the first hearing only.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This case presents the question whether the consent decree entered February 27, 1920, with a view to prevent-

ing a long feared monopoly in meat and other food products is void.[1]

On that day the United States filed in the Supreme Court of the District of Columbia, sitting in equity, a petition under § 4 of the Sherman Anti-Trust Act, July 2, 1890, c. 647, 26 Stat. 209, to enjoin violations of that statute and of the Clayton Act, October 15, 1914, c. 323, 38 Stat. 730, 736. It named as defendants the five leading packers; namely, Swift & Company, Armour & Company, Morris & Company, Wilson & Company (Inc.), and the Cudahy Packing Company. And it joined with them 80 other corporations and 50 individuals, all but four of whom were associated with some one of the five defendants above named. The petition charged the defendants with attempting to monopolize a large proportion of the food supply of the nation and with attempting to extend the monopoly by methods set forth. It stated that the purpose of the suit was to put an end to the monopoly described and to deprive the defendants of the instrumentalities by which they were perfecting their attempts to monopolize. It sought a comprehensive injunction and also the divestiture of the instrumentalities described.

---

[1] See *Swift & Co.* v. *United States,* 196 U. S. 375; *United States* v. *Armour & Co.,* 142 Fed. 808; *Stafford* v. *Wallace,* 258 U. S. 495; Report of the Select Committee on the Transportation and Sale of Meat Products, 51st Cong., 1st Sess., Sen. Rep. No. 829; Report of the Commissioner of Corporations on the Beef Industry, 58th Cong., 3d Sess., H. R. Doc. No. 382; Message from the President of the United States transmitting Summary of Report of the Federal Trade Commission on the Meat Packing Industry, 65th Cong., 2d Sess., H. R. Doc. 1297; Report of the Federal Trade Commission on the Meat Packing Industry, 1918–1920; Report of the Federal Trade Commission on Private Car Lines, 1919. See also Hearings before the Committee on Agriculture of the House of Representatives, 66th Cong., 2d Sess., pp. 2309–2357; Letter from the Attorney General, 68th Cong., 1st Sess., Sen. Doc. No. 61; Letter from the Chairman of the Federal Trade Commission, 68th Cong., 2d Sess., Sen. Doc. No. 219.

Simultaneously with the filing of the petition, all the defendants filed answers which denied material allegations of the bill.   There was filed at the same time a stipulation, signed by all the parties to the suit, which provided that the court might, without finding any fact, enter the proposed decree therein set forth.   On the same day a decree in the form so agreed upon was entered.   To this decree all parties filed assents.   In its opening paragraph, the decree embodied a clause of the stipulation to the effect that while the several corporations and individual defendants " maintain the truth of their answers and assert their innocence of any violation of law in fact or intent, they nevertheless, desiring to avoid every appearance of placing themselves in a position of antagonism to the Government, have consented and do consent to the making and entry of the decree now about to be entered without any findings of fact, upon condition that their consents to the entry of said decree shall not constitute or be considered an admission, and the rendition or entry of said decree, or the decree itself, shall not constitute or be considered an adjudication that the defendants or any of them have in fact violated any law of the United States."

The decree declared, among other things, that the court had jurisdiction of the persons and the subject matter; and " that the allegations of the petitioner state a cause of action against the defendants under the provisions " of the Sherman Anti-Trust Act and supplementary legislation.   It granted comprehensive relief in accordance with the prayer of the bill.   The details will be discussed later.   The decree closed with this provision: " Eighteenth. That jurisdiction of this cause be, and is hereby, retained by this court for the purpose of taking such other action or adding at the foot of this decree such other relief, if any, as may become necessary or appro-

priate for the carrying out and enforcement of this decree and for the purpose of entertaining at any time hereafter any application which the parties may make with respect to this decree."

None of the original parties to the suit made any application to the court between the date of the entry of the consent decree and November 5, 1924; but three intervening petitions were filed—that of the Southern Wholesale Grocers' Association, allowed September 10, 1921; that of the National Wholesale Grocers' Association, allowed November 5, 1921; and that of the California Cooperative Canneries, allowed September 13, 1924, see 299 Fed. 908. On November 5, 1924, two motions to vacate the decree were filed in the cause. One was by Swift & Company and the subsidiary corporations and individual defendants associated with it; the other by Armour & Company and the subsidiary corporations and individual defendants associated with it. The allegations of the two motions were identical; and each prayed that the consent decree be declared void. The grounds of invalidity relied upon will be stated later. On May 1, 1925, the two motions to vacate the consent decree were overruled. From the order overruling them, Swift & Company and Armour & Company, with their respective associates, took appeals to the Court of Appeals of the District of Columbia.

On May 28, 1926, the United States filed in that court a motion to dismiss the appeals for want of jurisdiction, contending that an appeal lay only directly to this Court. On January 3, 1927, the Court of Appeals of the District entered an order dismissing the appeals. Promptly thereafter, Swift & Company, Armour & Company, and their respective associates, moved that court to stay the mandate and to transfer the appeals to this Court, pursuant to the Act of September 14, 1922, c. 305, 42 Stat. 837, incorporated in the Judicial Code as § 238(a). On

January 31, 1927, the Court of Appeals vacated its opinion and order, and restored the case for reargument upon the question of its jurisdiction of the appeals and for argument on its jurisdiction to transfer the appeals to this Court. Thereafter, having heard argument, the Court of Appeals certified five questions to this Court, under § 251 of the Judicial Code as existing prior to the Act of February 13, 1925, c. 229, 43 Stat. 936. On October 17, 1927, this Court, having heard argument on the certificate, ordered that the entire record in the cause be sent here, as provided in the same section. On that, record the case is before us. Many questions are presented.

An objection of the Government to the jurisdiction of this Court must first be considered. The Expediting Act of February 11, 1903, c. 544, 32 Stat. 823, U. S. C., Title 15, § 29, provides that from a final decree in a suit in equity brought by the Government under the Anti-Trust Act, an appeal lies only directly to this Court. The Government suggests that under the Expediting Act no appeal lay to the Court of Appeals from the order denying the motion to vacate; that the Court of Appeals consequently was powerless to certify questions relating to the merits; that this Court by ordering up the record, as provided in § 251 of the Judicial Code, did not acquire jurisdiction to decide questions which could not lawfully have been certified under that section; that the case may not be treated as here on transfer, because the Court of Appeals of the District is not a circuit court of appeals within the meaning of the Act of 1922; and that this Court is therefore without power to pass on the merits of the cause. Swift and Armour answer that the motions to vacate the consent decree are not subject to the provisions of the Expediting Act because they are not a part of the suit filed February 27, 1920, under the Anti-Trust Act, but constitute a new suit. Compare *Stevirmac Oil*

*& Gas Co.* v. *Dittman,* 245 U. S. 210.   The argument is that the original suit ended with the entry of the consent decree, or at all events, at the expiration of the term, or at the end of the 60 days from the entry of the decree allowed by the Expediting Act for an appeal.   We need not enquire whether an independent suit to set aside a decree entered under the Anti-Trust Act is subject to the provisions of the Expediting Act.   The consent decree provided by paragraph Eighteenth for " entertaining at any time hereafter any application which the parties may make with respect to this decree."   Swift and Armour made these motions to vacate in the original suit; they arose out of the three proceedings for intervention filed after entry of the consent decree; and they were entitled in the original cause.

The Court of Appeals of the District was, therefore, without jurisdiction to entertain the appeals.   We think, however, that it was a circuit court of appeals within the meaning of the Transfer Act; and, as the judgment appealed from was entered before the effective date of the Act of February 13, 1925, the appeals should have been transferred to this Court.   Compare *Pascagoula National Bank* v. *Federal Reserve Bank,* 269 U. S. 537; *Salinger* v. *United States,* 272 U. S. 542, 549; *Rossi* v. *United States,* 273 U. S. 636; *Timken Roller Bearing Co.* v. *Pennsylvania R. R. Co.,* 274 U. S. 181, 186.   The want of a formal order of transfer would not have been fatal to our taking jurisdiction of the whole case, had it come before us on writ of error or appeal.   *Wagner Electric Manufacturing Co.* v. *Lyndon,* 262 U. S. 226, 231; *Waggoner Estate* v. *Wichita County,* 273 U. S. 113, 116.   It is no more so now, when we have required the record to be sent up to us.   We treat the case as here.

The decree sought to be vacated was entered with the defendants' consent.   Under the English practice a consent decree could not be set aside by appeal or bill of

review, except in case of clerical error. *Webb* v. *Webb*, 3 Swanst. 658; *Bradish* v. *Gee*, 1 Amb. 229; Daniell, Chancery Practice, 6th Am. ed., \*973-974. · In this Court a somewhat more liberal rule has prevailed. Decrees entered by consent have been reviewed upon appeal or bill of review where there was a claim of lack of actual consent to the decree as entered, *Pacific R. R. Co.* v. *Ketchum*, 101 U. S. 289, 295; *White* v. *Joyce*, 158 U. S. 128, 147; or of fraud in its procurement, *Thompson* v. *Maxwell Land Grant Co.*, 168 U. S. 451; or that there was lack of federal jurisdiction because of the citizenship of the parties. *Pacific R. R. Co.* v. *Ketchum, supra.* Compare *Fraenkl* v. *Cerecedo*, 216 U. S. 295. But " a decree, which appears by the record to have been rendered by consent, is always affirmed, without considering the merits of the cause." *Nashville, Chattanooga & St. Louis Ry. Co.* v. *United States*, 113 U. S. 261, 266. Compare *United States* v. *Babbitt*, 104 U. S. 767; *McGowan* v. *Parish*, 237 U. S. 285, 295. Where, as here, the attack is not by appeal or by bill of review, but by a motion to vacate, filed more than four years after the entry of the decree, the scope of the enquiry may be even narrower. Compare *Kennedy* v. *Georgia Bank*, 8 How. 586, 611-612. It is not suggested by Swift and Armour that the decree is subject to infirmity because of any lack of formal consent, or fraud, or mistake. But eight reasons are relied on as showing that, in whole or in part, it was beyond the jurisdiction of the court.

*First.* At the time the questions were certified, there was a contention that the Supreme Court of the District lacked jurisdiction of the subject matter, because it is not a district court of the United States within the meaning of the Anti-Trust Act. After entry of the case in this Court, that contention was disposed of by *Federal Trade Commission* v. *Klesner*, 274 U. S. 145. Now, it is conceded that the Supreme Court of the District has power

to administer relief under the Anti-Trust Act; but the claim is made that in this proceeding it was without jurisdiction, because the petition was addressed to the " Supreme Court of the District of Columbia, sitting in equity," instead of to the special term of that court " as the District Court of the United States." The argument has compelled enquiry into legislation affecting the courts of the District, enacted from time to time during a long period. It would not be profitable to discuss the details of the legislation. We are of opinion that this suit under § 4 of the Anti-Trust Act, which could only have been brought in a court of equity, was properly brought in the Supreme Court of the District, sitting in equity. This conclusion has support in established practice in analogous cases.[2]

*Second.* It is contended that the Supreme Court lacked jurisdiction because there was no case or controversy within the meaning of § 2 of Article III of the Constitution. Compare *Lord* v. *Veazie,* 8 How. 251; *Little* v. *Bowers,* 134 U. S. 547; *South Spring Hill Gold Mining Co.*

---

[2] Suits in equity under Revised Statutes, § 4921, to enjoin patent infringements, like suits in equity under the Anti-Trust Acts, are entertained by the Supreme Court of the District solely by virtue of its general powers as a District Court of the United States. Revised Statutes, § 629(9); Act of March 3, 1911, c. 231, 36 Stat. 1087, 1167. These are commonly brought, as was the case at bar, in the equity term. See the original papers in *Krupp* v. *Crozier,* 32 App. D. C. 1; *Boynton* v. *Taggart,* 40 App. D. C. 82; *Tabulating Machine Co.* v. *Durand,* 38 Wash. L. R. 552; *Comptograph Co.* v. *Adder Machine Co.,* 41 App. D. C. 427; *Hutchison Vapor Heating Corporation* v. *Mouat,* 48 App. D. C. 388. In *United States* v. *Baltimore & Ohio R. R. Co.,* 26 App. D. C. 581, it was held that a suit to collect penalties for violation of the Safety Appliance Act might be brought in the circuit term of the Supreme Court of the District, though the Act provided for the bringing of suits " in the district court of the United States having jurisdiction in the locality where such violation shall have been committed." Act of March 2, 1893, c. 196, 27 Stat. 531, 532

v. *Amador Medean Gold Mining Co.*, 145 U. S. 300; *California* v. *San Pablo & Tulare R. R. Co.*, 149 U. S. 308. The defendants concede that there was a case at the time when the Government filed its petition and the defendants their answers; but they insist that the controversy had ceased before the decree was entered. The argument is that, as the Government made no proof of facts to overcome the denials of the answers, and stipulated both that there need be no findings of fact and that the decree should not constitute or be considered an adjudication of guilt, it thereby abandoned all charges that the defendants had violated the law; and hence the decree was a nullity. The argument ignores the fact that a suit for an injunction deals primarily, not with past violations, but with threatened future ones; and that an injunction may issue to prevent future wrong, although no right has yet been violated. *Vicksburg Waterworks Co.* v. *Vicksburg,* 185 U. S. 65, 82; *Pierce* v. *Society of Sisters,* 268 U. S. 510, 536. Moreover, the objection is one which is not open on a motion to vacate. The court had jurisdiction both of the general subject matter—enforcement of the Anti-Trust Act—and of the parties. If it erred in deciding that there was a case or controversy, the error is one which could have been corrected only by an appeal or by a bill of review. Compare *Pacific R. R. Co.* v. *Ketchum,* 101 U. S. 289, 297. On a motion to vacate, the determination by the Supreme Court of the District that a case or controversy existed is not open to attack. Compare *Cameron* v. *M'Roberts,* 3 Wheat. 591; *McCormick* v. *Sullivant,* 10 Wheat. 192, 199; *Kennedy* v. *Georgia Bank,* 8 How. 586, 611-612; *Des Moines Navigation Co.* v. *Iowa Homestead Co.,* 123 U. S. 552, 557; *Dowell* v. *Applegate,* 152 U. S. 327; *Cutler* v. *Huston,* 158 U. S. 423, 430; *New Orleans* v. *Fisher,* 180 U. S. 185, 196; *Chesapeake & Ohio Ry. Co.* v. *McCabe,* 213 U. S. 207.

*Third.* It is contended that the consent decree was without jurisdiction because it was entered without the support of facts. The argument is that jurisdiction under the Anti-Trust Acts cannot be conferred by consent; that jurisdiction can exist only if the transactions complained of are in fact violations of the Act; that merely to allege facts showing violation of the anti-trust laws is not sufficient; that the facts must also be established according to the regular course of chancery procedure; that this requires either admission or proof; and that, here, there was no admission but, on the contrary, a denial of the allegations of the bill, and a recital in the decree that the defendants maintain the truth of their answers, assert their innocence, and consent to the entry of the decree without any finding of fact, only upon condition that their consent shall not constitute or be considered an admission. The argument ignores both the nature of injunctions, already discussed, and the legal implications of a consent decree. The allegations of the bill not specifically denied may have afforded ample basis for a decree limited to future acts. *Deputron* v. *Young,* 134 U. S. 241, 250–251. If the court erred in finding in these allegations a basis for fear of future wrong sufficient to warrant an injunction, its error was of a character ordinarily remediable on appeal. Such an error is waived by the consent to the decree. *United States* v. *Babbitt,* 104 U. S. 767; *McGowan* v. *Parish,* 237 U. S. 285, 295. Clearly it does not go to the power of the court to adjudicate between the parties. *Voorhees* v. *Bank of the United States,* 10 Pet. 449; *Cooper* v. *Reynolds,* 10 Wall. 308; *Christianson* v. *King County,* 239 U. S. 356, 372.

*Fourth.* It is contended that even if the decree is not void as a whole, parts of it must be set aside as being in excess of the court's jurisdiction. This is urged in respect to the first and the ninth paragraphs, which are said to

be too vague and general. The first enjoins the corporation defendants from " in any manner maintaining or entering into any contract, combination, or conspiracy . . . in · restraint of trade or commerce among the several States, or from . . . monopolizing or attempting to monopolize . . . any part of such trade or commerce." The ninth enjoins the corporation defendants from " using any illegal trade practices of any nature whatsoever in relation to the conduct of any business in which they or any of them may be engaged." It is insisted that, as a court's power is limited to restraining acts which violate or tend to violate laws, the acts to be enjoined must be set forth definitely; and that these paragraphs are so general in terms as to make the defendants liable to proceedings for contempt if they commit any breach of the law. The paragraphs, if standing alone, might be open on appeal to the objection that they are too general to be sanctioned. Compare *Swift & Co.* v. *United States,* 196 U. S. 375, 396, 401. But they do not stand alone. They are to be read in connection with other paragraphs of the decree and with the allegations of the bill. *Barnes* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 122 U. S. 1, 14; *City of Vicksburg* v. *Henson,* 231 U. S. 259, 269. When so read, any uncertainties are removed. Moreover, the defendants by their consent lost the opportunity of raising the question on appeal. Obviously the generality of a court's decree does not render it subject to a motion to vacate.

*Fifth.* It is contended that paragraphs second to eighth of the decree are void because of their comprehensiveness. These paragraphs enjoin the defendants from holding directly or indirectly (without the consent of the court) any interest in any public stockyard, or any stockyard terminal railroad, or any stockyard market journal published in the United States; and enjoin the defendants, except as there provided, from engaging or being interested in

the business of manufacturing, buying, selling or handling any one of 114 enumerated food products or any one of 30 other named articles of commerce; from selling meat at retail; from selling milk or cream; from holding any interest in any public cold storage plant; from using their distributive systems (including branch houses, refrigerator cars, route cars, and auto trucks) in any manner for the purpose of handling any of the many articles above referred to; and from having more than a half interest in or control of any business engaged in manufacturing, jobbing, selling, transporting, or delivering any one of most of the articles above referred to.

The argument is that the power to issue an injunction is limited by the scope of the transactions prohibited by §§ 1, 2 and 3 of the Anti-Trust Act; that the defendants are here enjoined, not only from remaining in these lawful businesses named, but also from ever re-entering them; that none of these " unrelated " lines of business are unlawful in themselves; that none can be restrained unless, by a finding of the essential facts, the connection with the conspiracy is established; that no such facts have been found; that the parties cannot by consent confer jurisdiction to issue an injunction broader than the facts warrant; and that an injunction so broad as that entered involves usurpation by the judicial branch of the Government of the function of Congress. Compare *United States* v. *New York Coffee & Sugar Exchange,* 263 U. S. 611, 621. Here again, the defendants ignore the fact that by consenting to the entry of the decree, " without any findings of fact," they left to the court the power to construe the pleadings, and, in so doing, to find in them the existence of circumstances of danger which justified compelling the defendants to abandon all participation in these businesses, to divest themselves of their interest therein, and to abstain from acquiring any interest hereafter.

*Sixth.* The defendants make a further contention concerning paragraphs second to eighth, which differs little from that just answered. It is urged that the decree is void, because it obliges the defendants to abandon completely certain businesses which are inherently lawful and forbids them from entering into other businesses which may be lawfully conducted; and that to do this is not merely unauthorized by, but is contrary to, the common law and the Anti-Trust Act. Compare *Nordenfelt* v. *Maxim Nordenfelt Co.,* [1894] A. C. 535; *United States* v. *Addystone Pipe & Steel Co.,* 85 Fed. 271. But the court had jurisdiction of the subject matter and of the parties. And even gross error in the decree would not render it void. Compare *Ex parte Watkins,* 3 Pet. 193; *Ex parte Parks,* 93 U. S. 18; *In re Coy,* 127 U. S. 731, 756.

*Seventh.* It is contended that the decree is void because the injunction is not limited to acts in interstate commerce. This objection is in essence like the two preceding ones. The argument is that each of the businesses named in paragraphs second to eighth is susceptible of being carried on in intrastate commerce alone; that some of these businesses, for instance retail meat markets, are distinctly intrastate in character; that there was no finding of an interweaving of intrastate and interstate transactions as in *United States* v. *New York Central R. R. Co.,* 272 U. S. 457, 464, or that the intrastate transactions had any relation to interstate operations, as in *Swift & Co.* v. *United States,* 196 U. S. 375, 397, and *Stafford* v. *Wallace,* 258 U. S. 495; and that, therefore, the prohibition of intrastate transactions was an overstepping of federal powers which renders the decree a nullity. Again, the argument fails to distinguish an error in decision from the want of power to decide. The allegations of a conspiracy to obstruct interstate commerce brought the case within

the jurisdiction of the court. *The Fair* v. *Kohler Die Co.,* 228 U. S. 22; *Binderup* v. *Pathé Exchange,* 263 U. S. 291, 304; *Moore* v. *New York Cotton Exchange,* 270 U. S. 593, 608. Compare *Chicago, Rock Island & Pacific Ry. Co.* v. *Schendel,* 270 U. S. 611, 616–617. If the court, in addition to enjoining acts that were admittedly interstate, enjoined some that were wholly intrastate and in no way related to the conspiracy to obstruct interstate commerce, it erred; and had the defendants not waived such error by their consent, they might have had it corrected on appeal. But the error, if any, does not go to the jurisdiction of the court. The power to enjoin includes the power to enjoin too much. Compare *Fauntleroy* v. *Lum,* 210 U. S. 230.

*Eighth.* Finally, it is urged that the decree is void, because the Attorney General had no power to agree to its entry. Compare *Kelly* v. *Milan,* 127 U. S. 139, 159. The argument is that the utmost limit of his authority was to agree to a decree which would prohibit the defendants from doing specific acts which constitute contracting, combining, conspiring or monopolizing in violation of the anti-trust law; that he was without authority to enter into a contract by which citizens of the United States were prohibited absolutely and forever from engaging in the lawful business of conducting stockyards, storage warehouses, or the manufacture and distribution of many named food and other products, and by which many corporations and individuals would be forever taken out of the field of competition with others engaged in the same lines of business. Whether it would follow that the defendants are entitled to have the decree vacated because of such lack of authority, we need not decide. For we do not find in the statutes defining the powers and duties of the Attorney General any such limitation on the exercise of his discretion as this contention involves. His

authority to make determinations includes the power to make erroneous decisions as well as correct ones. Compare *United States* v. *San Jacinto Tin Co.*, 125 U. S. 273, 278–280; *Noble* v. *Union River Logging R. R. Co.*, 147 U. S. 165; *Kern River Co.* v. *United States*, 257 U. S. 147, 155; *Ponzi* v. *Fessenden*, 258 U. S. 254, 262.

*Affirmed.*

MR. JUSTICE SUTHERLAND and MR. JUSTICE STONE took no part in the consideration or decision of this case.