BOWLES, Price Administrator, v. GRANITE STATE PACKING CO. et al.

Civil Actions Nos. 386, 403.

District Court, D. New Hampshire.

Sept. 28, 1945.

586

McLane, Davis & Carleton, by John P. Carleton, all of Manchester, N. H., and Widett & Kruger by Harold Widett, all of Boston, Mass., for Granite State Packing Co.

Clinton S. Osgood and Charles B. Mc-Laughlin, both of Manchester, N. H., for the OPA.

CONNOR, District Judge.

These are two actions brought by Chester Bowles, Administrator of the Office of Price Administration, against the Granite State Packing Company, a corporation, and Alex Shapiro and Mitchell Muskat, officers thereof.

The plaintiff alleges that the defendants have engaged in acts and practices which constitute a violation of Section 4(a) of the Emergency Price Control Act of 1942, as amended, 56 Stat. 23, 765, 57 Stat. 566, Pub.L. 383, 78th Cong., 58 Stat. 632, 50 U.S.C.A.Appendix § 904(a), Executive Order 9250, 7 FR 7871, Executive Order 9328, 8 FR 4681, 50 U.S.C.A. Appendix § 901 note, in that the defendants have violated Maximum Price Regulation No. 574—Live Bovine Animals (Cattle and Calves), issued January 29, 1945, effective January 29, 1945, as amended to date, effective in accordance with the provisions of the Act. Pursuant to Section 205(a) of the Act the administrator seeks to enforce compliance with Section 4(a). 50 U.S.C.A.Appendix § 901 et seq.

The defendants, in their answers, generally deny the allegations set forth in the complaints and further answering say that if the violations be proved that such were not wilful and intentional, that they were acting in good faith and that the public interest does not require that granting of an injunction.

The separate actions covered different periods of alleged violations and for the purposes of trial were ordered consolidated.

■ Jurisdiction is conferred upon the Court by Section 205(a) of the Act.

The corporate defendant has its principal place of business in Manchester, within this District, and has been and is the owner and operator of a slaughtering establishment known as the "Granite State Packing Company."

The defendant, Alex Shapiro, is president, treasurer and director of said corporation and the owner of the majority of the common stock.

The defendant, Mitchell Muskat, is the office manager, director and the owner of shares of stock. Both reside in Manchester and actively direct, manage and participate in the corporation's business, the greater part of which involves the production of certain products for the United States Army.

The pertinent regulation, Maximum Price Regulation 574, provides that a slaughterer's payments for all live cattle slaughtered in each monthly accounting period must come within the maximum range of prices established in the regulation. Maximum and minimum ranges were set up in December 1943, under the Government program of paying subsidies to slaughterers. The regulation requires a slaughterer to report his live cattle purchases to the Office of Price Administration, by filing with it each month, a copy of the Defense Supplies Corporation form on which he claims his subsidy from the Government. The regulation also adopts the method used in the subsidy program for determining the total maximum and minimum permissible payments for cattle slaughtered by a given slaughterer during a monthly accounting period. The maximum permissible amount which the slaughterer may pay for cattle during the accounting period is determined by a formula involving certain conversion factors. Under the subsidy program a slaughterer becomes eligible only if he does not exceed the permissible payments so computed. The regulation adopts ranges of prices, computation methods and reporting form which is to be employed by the slaughterer.

During the months of March, April and May 1945, the undisputed evidence disclosed that the corporate defendant paid various sums in excess of the maximum legal price for live cattle purchased throughout this period. The figures are, $6979.43, $4771.48 and $6816.89 for the months of March, April and May respectively.

The violations charged are admitted by the corporate defendant but it is contended that since the other defendants, who are officers and agents of the corporation, did not make purchases individually, but acted only on behalf of the corporation, they did not violate the provisions of the regulations and the complaints should be dismissed as to them.

■ This contention merits scant consideration. It has long been held that a corporation can act only through its officers and agents and they may not escape civil liability or susceptibility to injunctions or other orders to enforce compliance, merely by insisting that they acted only as agents. Any doubt which may exist is resolved adversely to the defendant's contention by examination of the regulation itself which provides, Sec. 2(a), that "no person shall buy or receive live cattle at prices in excess of those provided therein," and, Sec. 7(a), that the word "person" includes a "corporation" or "any representative" of the same.

It is not denied that violations did occur within the months above referred to, but the defendants take the position that such could not have been avoided, because of market conditions, delays in transit, and the geographical location of the defendant's plant.

■ It is their further contention that definite efforts were made by them to prevent these violations or their continuance. While it is true that the defendants did undertake certain measures to keep within compliance of the regulation, I am not impressed with their claim that good faith was exercised and that sufficient and proper precautions were taken. These violations were of a substantial character. In the month of March the excess payments amounted to 3.53% of the total purchases; in the month of April, 2.74%; and in the month of May 3.09%. It is of further significance that the violations involved consecutive months. If compliance was sincerely desired, their mode of operations could have been altered or recourse had to the administrator and the Emergency Court of Appeals. Good faith dictated such a course, rather than adherence to

a policy which resulted in continued non-compliance and portended further infractions. Their failure to comply with the regulation was not wholly involuntary, and no reason appears why these actions should be dismissed.

Whether the violations were the result of negligence or of inadvertence or of wilfulness, becomes important only in determining whether an injunction should be ordered. The statute neither requires nor directs that a request on the part of the Administrator for injunctive relief must of necessity be granted. While the language of the particular section appears mandatory in its terms, discretion is still retained by the Court in the matter of granting such process. The essential question presented is whether, in the exercise of sound discretion, the Court should grant the relief prayed for. It has been indicated to the Court that during the months of June and July the defendants were in compliance.

Some time has elapsed between the hearing and the submission of briefs and oral argument. Much has transpired in the interim. Hostilities have ceased, and the requirements of the Government, in respect to its demand for meat have been drastically revised. Had the conditions which obtained at the time of bringing these actions continued, a different conclusion than the one herein reached would have probably been indicated.

In substance and in effect this is an equitable proceeding and the requirements of equity practice and relief should not be lightly considered. The rule is well established that a writ of injunction is used only to stop existing or threatened violations and not to punish past offenses. Brown v. Hecht Co., 78 U.S.App.D.C. 98, 137 F.2d 689; Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587, and Walling v. Shenandoah-Dives M. Co., 10 Cir., 134 F.2d 395.

It is equally well settled that injunctive process is to be cautiously dispensed and to be issued only in the sound discretion of the Court, according to the necessities of the particular case. It was designed to deter, not to punish.

The Court cannot but take judicial notice of the changed conditions in the cattle market and the fact that with cessation of the war, Army requirements have been definitely lessened and possibly ended.

With the foregoing factors in mind, I am not convinced that this situation is one which necessitates the issuance of an injunction. With the benefits that should accrue to the defendants, due to the improved and expanded market, there seems to be little reason why they should not be able to fully comply with the terms of the Act.

Under all the circumstances, and adopting the language of the Court in Hecht Co. v. Bowles, 321 U.S. 321, 328, 64 S.Ct. 587, 591, 88 L.Ed. 754, "the fairest course to follow and one which would be as practically effective as the issuance of an injunction," is to retain these cases on the docket, with the right of the administration on reasonable notice, and a showing that violations of the Act have been resumed, to again apply to this court for injunctive relief.

Accordingly such order will be entered.