James W. HOLLEY, III, Linwood C. Bailey and James A. Gray, Plaintiffs,

v.

The CITY OF PORTSMOUTH, VIRGINIA, Fred A. Duke, Mayor of the City of Portsmouth, Virginia, the City Council of the City of Portsmouth, Virginia, I. G. Vass, City Manager of the City of Portsmouth, Virginia, Harry Kelly, Caretaker of the City Park Golf Course of the City of Portsmouth, Virginia, T. D. Smith, Superintendent of Parks and Cemeteries of the City of Portsmouth, Virginia, W. J. Denny, Superintendent of the Department of Public Welfare of the City of Portsmouth, Virginia, and Their Agents and Successors in Office, Defendants.

Civ. A. No. 2261.

United States District Court E. D. Virginia, Norfolk Division.

April 10, 1957.

Yolande H. Chambers, Victor J. Ashe, Norfolk, Va., for plaintiffs.

R. C. Barclay, Portsmouth, Va., for defendants.

HOFFMAN, District Judge.

On January 3, 1952, in the case of Green v. The City of Portsmouth, Civil Action No. 1271, this Court, speaking through District Judge Albert V. Bryan, entered an order restraining and enjoining the City of Portsmouth, its officers, agents, etc., from maintaining and operating golf facilities for the use of its citizens of any race without providing substantially equal facilities for persons of all races. Prior to the entry of the aforesaid injunctive order, the City had permitted only members of the white race to use the golf course in question, and no provision had been made for Negro citizens to play golf on any municipal course. Subsequent thereto, the City permitted Negroes to use the facilities on Fridays only, at which time the members of the white race were excluded.

Matters remained in *status quo*, with Negroes using the golf course on Fridays, until the "separate but equal" doctrine was abolished by the United States Supreme Court in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, followed by Mayor and City Council of Baltimore City v. Dawson, 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774, affirming Dawson v. Mayor, etc., 4 Cir., 220 F.2d 386, and Holmes v. City of Atlanta, 350 U.S. 879, 76 S.Ct. 141, 143, 100 L.Ed. 776, reversing 5 Cir., 223 F.2d 93. There is no longer any room for doubt that the separate but equal doctrine has ceased to exist with respect to governmental facilities including golf courses, swimming pools, bathing beaches, parks, etc.

Merely because the City was acting in compliance with the prior order of this Court affords no protection after the United States Supreme Court placed a contrary interpretation on the validity of the separate but equal doctrine. Flemming v. South Carolina Electric and Gas Co., 4 Cir., 239 F.2d 277. Directly in line with the present factual situation is Hayes v. Crutcher, D.C., 137 F.Supp. 853, wherein the Court set aside a prior order permitting members of the Negro race to use a municipal golf course on specified days and thereafter granted unlimited use.

On Sunday, July 15, 1956, plaintiffs, residents of the City and all members of the Negro race, appeared at the golf course and requested permission to play. They were denied this right and were told that Negroes could only use the course on Fridays. They employed counsel who, in turn, endeavored to arrange a conference with City officials. Their letter remains unanswered. This action for a preliminary and permanent injunction followed within a matter of days.

On August 29, 1956, the Court granted a temporary injunction restraining the defendants from denying free and unrestricted use and enjoyment of the golfing facilities to the plaintiffs and other Negro residents on account of race and color. Since that date the City has complied in every respect with the order and the evidence reveals that Negroes have used the facilities whenever desired and without incident.

The City Manager, under whose direct supervision the golf course is operated, testified that, while he could not speak officially for the City, as long as he remained City Manager he intended to abide by the policy of unrestricted use by members of all races as he was cognizant of the law as it is now interpreted. The City Attorney stated to the Court that the City Council had been advised by him that, under the law, unrestricted use by all races must be granted, subject to reasonable rules and regulations applicable to all.

Upon conclusion of the evidence the Court expressed doubt as to the necessity of a permanent injunction and concluded to permit the matter to remain in its present status under the temporary injunction now in existence, for an additional period of one year, at which time the Court will then determine whether there is "reasonable expectation that the wrong will be repeated". If no such reasonable expectation as to repetition is then probable, the case may be dismissed.

There is authority to support the Court's action in United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 897, 97 L.Ed. 1303, and, while the instant case is perhaps not "moot" at the present time, it may become so if the defendants can demonstrate that "there is no reasonable expectation that the wrong will be repeated". As the Supreme Court said:

"Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct. Hecht Co. v. Bowles, supra [321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754]; Goshen Mfg. Co. v. Hubert A. Myers Mfg. Co., 1916, 242 U.S. 202, 37 S.Ct. 105, 61 L.Ed. 248. The purpose of an injunction is to prevent future violations, Swift & Co. v. United States, 1928, 276 U.S. 311, 326, 48 S.Ct. 311, 314, 72 L.Ed. 587, and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the Court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. The chancellor's decision is based on all the circumstances; his discretion is necessarily broad and a strong showing of abuse must be made to reverse it. To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance

and, in some cases, the character of the past violations."

In the days of great emotional stress throughout the Southern states following the decision of the Supreme Court in Brown v. Board of Education, supra, it is gratifying to note that some steps have been taken by the City to comply with the law. True, the defendants herein are adhering to the terms of a temporary injunction which remains in effect, but the fact is that seven months have elapsed without any disruption of normal operations at the golf course and with total absence of an unfortunate incident tending to disturb relations between races. The case may not be moot at this time, but within one year it is not unlikely that the entire governing body of the City will indicate a willingness to accept the inevitable result as being the law of the land. At such time, if not prior thereto, there would no longer be any need for injunctive relief as there would be "no reasonable expectation that the wrong will be repeated".

The situation is not unlike the developments following the abandonment of Virginia state laws requiring segregation of passengers on public conveyances operating intrastate. If there have been any racial disturbances in Virginia by reason of such change, it has not come to the attention of this Court. Similarly, it was pointed out in the argument of counsel that the City of Norfolk operates a municipal golf course on a lease basis and that, following this Court's decision in Tate v. Department of Conservation and Development, D.C., 133 F.Supp. 53, affirmed 4 Cir., 231 F.2d 615, certiorari denied 352 U.S. 838, 77 S.Ct. 58, 1 L.Ed. 2d 56, the lessee permitted members of all races to use said golf course[1]. The passage of time may result in an adjustment of many of these problems.

No one can be prejudiced by the action of the Court in staying proceedings to await developments. The plaintiffs and all members of the Negro race will still be able to use the golf facilities owned and operated by the City. With a reasonable spirit of cooperation the need for further relief will be eliminated. Moreover, as was said in the W. T. Grant Co. case, a dismissal "would not be a bar to a new suit in case possible violations arise in the future". Should it thereafter become necessary to institute another action, the Court has ample authority to assess adequate attorney's fees against the defendants in any action deemed appropriate.

Order accordingly.

[1]. It is not suggested that, where a lessee pays ground rent on a reasonable basis and private capital is used for the construction and operation of the golf course with no expense to the taxpayers, the Tate case should be controlling as such a situation would not be a governmental facility or operation.