### HARTFORD v. BRIDGEPORT TRUST CO.

(Circuit Court, D. Connecticut. February 12, 1906.)

#### No. 1,072.

EQUITY—DISMISSAL OF SUIT—SETTLEMENT OF ISSUES.

A bill in equity against an administrator alleged a partnership between complainant and defendant's intestate, and prayed for an accounting as to the partnership business and injunctive relief against interference therewith by defendant. By an answer and a cross-bill defendant denied the partnership and asked affirmative relief. After the case had lain dormant for two or three years defendant filed a supplemental cross-bill alleging a settlement pursuant to which the property in controversy had been transferred to a corporation formed for the purpose. *Held*, that no issues remained for trial, and that the court would not retain the case for the purpose of litigating the right of defendant to enforce an alleged agreement by plaintiff in the settlement to deliver to defendant certain stock of the corporation, against plaintiff's petition to dismiss.

In Equity.

Arthur J. Baldwin, for plaintiff.
George P. Carroll, for defendant.

PLATT, District Judge. In the original bill filed October 24, 1901, plaintiff claimed to have been a partner of the deceased Gilman, whose administrator the defendant is, and asked for an accounting and for injunctive relief against any interference by defendant with the copartnership property which consisted of 140 tea stores scattered through several states, exclusive of 57 stores located in New York, concerning which, separate administration existed.

Defendant, by answer filed January 4, 1902, denied the partnership, which, if a fact, would of course remove the reason for a copartnership accounting. Said answer further sets forth that plaintiff had never been anything more than Gilman's managing agent, and that since Gilman's death, his effort to close the estate as the surviving partner was an intrusion, and that a receiver ought to be appointed by the court to wind matters up. Defendant then, in what it called a "cross-complaint" and by way of "affirmative relief," re-

peated its answer, and set forth that since Hartford had put himself within the court's jurisdiction, and whereas there was no adequate remedy at law for such a condition of things as the answer exhibited, the court ought to order Hartford to stop refusing defendant's demand for the scattered property and that a receiver be appointed to wind up the tangled skein of affairs.

Exceptions to the answer were filed for complainant on February 4, 1902; one for impertinence and scandal, and one for insufficiency. In such situation the cause lay torpid in the files of the court until August 28, 1905, when a paper was filed by defendant, entitled "Supplemental Cross-Complaint" which sets forth, in substance, that since the original answer, to wit, on August 15, 1902 (all other difficulties having been arranged), plaintiff and defendant had entered into an agreement by which defendant agreed to transfer all its rights in the property outside of New York to a New Jersey corporation to be formed, in consideration that plaintiff should transfer $15,000 preferred stock in said corporation to the defendant; that the corporation had been formed and that Hartford had more than $25,000 preferred stock thereof in his possession; that the Connecticut superior court, acting on appeal from the Bridgeport probate court, had authorized the defendant to settle and compromise the claims in dispute with Hartford; that defendant had demanded the transfer of the $25,000 preferred stock, but plaintiff had refused. The prayer for relief which culminates such recital is unique and deserves to be inserted. Here it is:

"Wherefore, inasmuch as your orator is without remedy in the premises, it prays by way of remedy against this plaintiff who is defendant in the cross-complaint, that it may have against him the remedy prayed for in the original cross-complaint, except as modified by the facts herein set forth."

The remedy asked for in the alleged original cross-complaint was practically the same as that suggested in the original answer, and upon the facts recited in this "supplemental cross-complaint," it would seem that if the defendant was not as he said himself "without remedy," the situation had at least become so "modified" that no court would be able to discover what the remedy ought to be. The complications, when analyzed, offer us a compound which can be called neither "fish, flesh, nor good red herring."

Now in a paper styled "Substituted Supplemental Cross-Complaint" presented for filing January 29, 1906, defendant charges the plaintiff with having been Gilman's partner and demands an accounting. If it had taken this position at the beginning, a decree must have gone against the defendant pro confesso. The entire case now revealed to the court shows that a substantial compliance with plaintiff's original demand has been otherwise effected, and therefore nothing remains upon the record to be litigated. All the copartnership property has gone to the New Jersey corporation; plaintiff says that the defendant has consented that it should so go. The defendant does not deny that it consented, but claims that such consent was obtained through a promise made by the plaintiff to transfer to the defendant,

as a consideration for such consent, $25,000 in preferred stock of the New Jersey corporation.

The only open question is about the transfer of the stock. That is clearly a question of law, and I may say in passing, although it does not affect my disposition of the case, that the plaintiff offers to meet the defendant on that issue, in the forum of defendant's own choosing. The defendant might find it a serious matter to settle what disposition could be lawfully made of that preferred stock, if such litigation should turn in its favor, and the new expense should have failed to eat it up in advance. There are no debtors to demand it. Taxes have been taken care of. Present expenses do not enter in. The heirs who might otherwise apply for it, have each and all, accepted an acquittance of whatever claims they once had, by taking over as an equivalent, certain proportionate interests in the New Jersey corporation. It is unimportant whether or not they agreed to do so in the writing which they signed. Actions speak louder than words and the facts on the record show enough to estop any claimant from demanding further indemnity from the plaintiff. This court, however, is not called upon to pass on that controversy. If a real contention exists, it is a matter of independent litigation.

Equity and good conscience demand that the so-called "Supplemental Substitute Cross-Complaint" should not be filed, and that, upon plaintiff's petition filed January 29, 1906, an order should be entered discontinuing this action.

It is so ordered.