**MACKLIN et al. v. KAISER CO., Inc.**
Civil Action No. 3000.

District Court, D. Oregon.
Dec. 20, 1946.

Mowry & Mowry, and Thomas H. Tongue, III, all of Portland, Or., for plaintiff.

Fletcher Rockwood, of Portland, Or., and Thelen, Marrin, Johnson & Bridges, of San Francisco, Cal., for defendant.

JAMES ALGER FEE, District Judge.

The initiation of the present litigation came about through one Clarence Culver, a former resident of Oklahoma. He came to this section, according to his testimony, at the request of the Kaisers who were

soliciting help. At first employed at Oregon Shipbuilding Corporation and later as a guard at Swan Island Shipyard on July 24, 1943, he drew 95 cents an hour until October 3, 1943, when he was employed at $1.05 per hour until his release on February 27, 1945. He claims he was required to report at roll call from eight to thirty minutes ahead of midnight when he went on duty and watched until 8:00 A. M. For some unaccountable reason, it was some months after his release while he was in other employment, that he first gave thought to the fact that he had been putting in overtime in connection with the roll call. As a result he wrote to the Wage and Hour Office at Washington, D. C. The Wage and Hour Office in Portland advised Culver, who is one of the plaintiffs here, regretfully, that they were unable to prosecute for the recovery of overtime and suggested that he take measures to bring suit himself. They did not advise him that there was any doubt as to his right to collect in view of the fact that any liability might ultimately fall upon the United States Government for whom the employees of this bureau were working. Judge Dawkins in an opinion marked with crisp perspicacity says in Love v. Silas Mason Co., D.C., 66 F.Supp. 753, 754, where he discusses the effect of a contract between the United States Government and the employer for the prosecution of the war effort:

"This contract with the Government was entered into for performance in this state for the producing of munitions needed to prosecute the recent war and any judgment recovered will have to be paid, not by defendant, but by the Government.

"According to the contention of defendant in this case all these employees, who have sued for several hundred thousand dollars, continued to work without complaint under the assumption by all parties that they were not affected by the Fair Labor Standards Act."

This action was begun under these auspices by fifty guards of the war-time operated shipyards of Kaiser Company Incorporated to recover overtime, penalties and attorney fees under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The action is founded on the claim that each of these guards was required to report one half hour before being posted as a watch, for roll call. Whether the intention before filing suit was to dispose of this cause by settlement or otherwise, the parties have now stipulated that the defendant company should pay less than the amount claimed for overtime, make no payment on penalties and pay a sum as attorney fees in full settlement of all liability. The United States Maritime Commission has approved the agreement by a letter in writing.

Thereafter, motion was filed for this court to enter judgment in strict accordance with the stipulation. The court did not enter the judgment. Instead, the taking of testimony was ordered. Evidence indicating the attorney fees demanded were reasonable if the order entered, was then offered. Only upon the insistence of the court was any testimony offered as to the facts. There was no cross-examination since one of the attorneys for defendant frankly stated that if this were a trial on the merits he would have asked questions, but since he did not consider the proceeding of that nature he would not cross-examine. The United States did not intervene, nor was there any appearance in its behalf. The court directed the United States Attorney to appear amicus curiae. The testimony of nine only of the fifty plaintiffs tended to show that a roll call was once established at thirty minutes before the time of going on duty. Another witness indicated that this degenerated and eventually guards even reported late without penalty. Due to the suggestion of the court, there were other plaintiffs in the courtroom and it was stated without objection that their testimony would be the same as the other plaintiffs and this was stated also as to the generated and eventually guards even rebalance of the fifty plaintiffs who neither testified nor were in the courtroom.

After the testimony was finished the court raised the question as to whether Kaiser Company, Incorporated, was engaged in the production of goods for com-

merce in building these ships. One of the attorneys stated, without contradiction, that the Kaiser Company, Incorporated, was so engaged. The court also raised the question as to whether the plaintiffs were so engaged. In reply it was stated that in the case of some guards there was a dispute as to this feature since they had worked in barracks areas, dormitory areas, and cafeteria areas outside the fence, but that the settlement was in gross and covered these employees also.

The court at the outset was inclined to enter judgment on a stipulation between private parties but was of opinion, since there was a public interest, testimony was required. On an independent search conducted in view of the fact that all concerned were acquiescing in the entry of judgment, the court discovered serious obstacles. Therefore, the court raised the question as to whether the inclusion of overtime for employees who worked in positions where they were thus guarding installations which had no relation to the production of goods for commerce, was not a compromise of coverage whereby the overtime worked by employees who might have been engaged in the production of goods for commerce was balanced off against the time of those who clearly were not so engaged, and a compromise thus effected which did not do justice to the inalienable rights of the former. In view of the factual situation thus existing and in view of the failure to pay anything on account of the liquidated damages provided for by the Act, the court pointed out that it was probable that plaintiffs could not accept a compromise of their respective claims assuming these were valid. The court made this inquiry in the light of the opinion in D. A. Schulte, Inc., v. Gangi, 66 S.Ct. 925, 90 L.Ed. ——.

Briefs were filed upon the legality of the settlement in the light of these propositions. It was argued by both plaintiffs and defendant that it is permissible for employees to settle where there is a dispute as to the amount of overtime worked as distinguished from coverage. Explaining away a rather fulsome statement above noted indicating some employees had not worked all the time guarding installations used for the production of goods for commerce, defendant now says an investigation has been made which discloses that no employees worked a complete week around that type of installation. Further, it says "it must be recognized that if during a particular week a plaintiff performed any work in commerce or in the production of goods for commerce, then he is entitled to the benefits of the Act for that week, irrespective of whether a part of his work was intrastate in character. Consequently, defendant has determined that there are no facts with respect to the plaintiffs here involved warranting an assertion that during any work week any of said plaintiffs were not entitled to the benefits of the Act, * * *." Defendant, therefore, offers to include these propositions in a stipulation.

The court is still impressed with the position that even in private litigation the plaintiffs, or others in their situation, would not be permitted simply to enter a compromise judgment upon a stipulation which did not set up facts showing their coverage. This stipulation is devoid of any agreement as to such facts. Although there is loose expression in some opinions, no law requires a court to perform the judicial act of entering judgment simply because the parties have agreed that a certain figure shall be used as the amount of damage or liability. The court has jurisdiction to dismiss the action even though the reasons for so doing may be utterly inadequate.[1] Likewise, the court has jurisdiction to refuse to enter judgment upon a stipulation which does not set out facts. The court might well conclude this case upon the proposition that the plaintiffs have no right to bargain away the benefits conferred by the Act in question. A court can "always refuse to sanction such agreements, when right and justice so require." McLeod v. Hyman, 272 Pa. 582, 116 A. 535, 536.

But the court has made an independent investigation and is of opinion that judgment cannot be entered on this

---

[1] Haggard v. Pelicier Freres, [1892] A.C. 61.

stipulation in any event. An examination into the pleadings, the stipulation itself, and the statements made by the respective attorneys in court makes crystal clear the proposition that any judgment entered in this case based on the stipulation would determine questions of fact which are highly controversial and establish as principles of law theories highly debatable. These may be outlined as follows: (a) There is a question as to whether the Kaiser Company, Incorporated, was engaged in the production of goods for commerce; (b) there is a question of whether these individual men were engaged in the production of goods for commerce either directly or indirectly even when they were guarding the main installations of the shipyard; (c) there is a question whether all of these men were engaged at all times in the production of goods for commerce when they were guarding other installations only indirectly connected with the construction; (d) there is a question of whether plaintiffs should be entitled to compromise their individual claims whether effecting coverage or not; (e) there is a question of whether the Kaiser Company, Incorporated, while it was engaged in the production of ships for the war effort under a cost contract plus fees in production of goods for the United States came within the purview of the Fair Labor Standards Act; (f) there is a question of whether the Maritime Commission as an administrative body can adjudicate these rights and agree to pay the same and have a judicial decree entered enforcing their determination; (g) there is a question of whether the United States can be rendered liable by stipulation, judgment or otherwise for overtime pay under the Fair Labor Standards Act; (h) there is a question of whether the United States can be rendered liable either by stipulation or judgment for a penalty imposed on private employers for failure to obey the mandates of the Fair Labor Standards Act of 1938.

It is clear from a review of the course of the proceedings that facts are here impliedly agreed to by the respective parties which may be contrary to those which a court might find upon a trial where the issues were sharply contended. The defendant is willing to stipulate further facts based on its investigation which a cross-examiner might destroy. There, parties by stipulating for a judgment have assumed certain rules of law. They even impliedly agree to doctrines of constitutional law on which the jurisdiction of the court is founded.

But a court examining such questions may properly, and at times is duty bound to, find the "fact" set up in a stipulation to be untrue.[2] No validity is allowed by courts to an agreement between parties litigant as to the rule of law.[3] Force in geometrical proportion emanates from these propositions where precedent making construction of the Constitution is required, or where the jurisdiction of the court is involved. Consent of the parties can establish neither the one or the other. The question whether either a contractor on a cost contract plus fees with the United States in building ships for the war effort, or his employees, is engaged in producing goods for commerce must be answered affirmatively by the court before it passes judgment. Jurisdiction of the court is inherent in that affirmative finding.

This issue should never be determined by a court in a proceeding which is not adversary. A tenant of residential property owned by defendant brought suit alleging that the property was in a defense rental area for which the Price Administration had promulgated a regulation and that the rent paid by him was in excess of the maximum fixed by the regulation. The court held that the action should be dismissed because the regulation was unconstitutional since Congress had improperly delegated power to the Administration. It appeared that the defendant owner had undertaken to procure an attorney to represent plaintiff and had assured plaintiff that his presence in court would not be necessary. The court said:

"The Government does not contend that, as a result of this cooperation of the two

---

[2] Swift & Co. v. Hocking Valley R. Co., 243 U.S. 281, 289, 37 S.Ct. 287, 61 L. Ed. 722.

[3] 92 A.L.R. 664, 665; United States v. Johnson, 319 U.S. 302, 304, 63 S.Ct. 1075, 87 L.Ed. 1413.

original parties to the litigation, any false or fictitious state of facts was submitted to the court. But it does insist that the affidavits disclose the absence of a genuine adversary issue between the parties, without which a court may not safely proceed to judgment, especially when it assumes the grave responsibility of passing upon the constitutional validity of legislative action." United States v. Johnson, 319 U.S. 302, 304, 63 S.Ct. 1075, 1076, 87 L. Ed. 1413.

■ Especially must it be noted that this suit is not adversary. When questions such as are posed by this record arise, the courts will be extremely hesitant to dispose thereof when the proceedings are not clearly adversary even if in entire good faith.[4] Indeed, it is expressly said that "such a suit is collusive because it is not in any real sense adversary."[5] This action is frankly and avowedly friendly. It was expressly stated in the record, "we are both on the same side." It may be noted without obloquy that counsel are able to agree on any proposition of fact or law necessary to base the judgment.

■ As a result of this absence of controversy, the stipulation of settlement renders the case moot.[6] The court is not then bound to enter judgment to enforce the stipulation of settlement made by the parties.[7] It is hornbook law that whenever a case in a federal court is settled by agreement, no "case or controversy"[8] remains and therefore the court loses jurisdiction.[9] A court of the United States by this constitutional limitation lacks power to render opinions merely advisory.[10] or to decide moot questions,[11] or to set precedents for future litigation.[12] When, by action of the parties, a case becomes moribund neither their desire nor their express consent can retain life in the controversy.[13]

But it is intimated in the record that the Attorney General has consented to the entry of judgment. In a case where the Government had confessed error in the trial of a criminal case, the court refused to be bound thereby, saying:

"The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection as well as to that of the enforcing officers. Furthermore, our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties."[14]

Here there is a public interest in the outcome of this case. If the court grant judgment it may be taken as sufficient basis for payment of money of the United States. Likewise, similar cases would follow the lines laid down herein. The entry of judgment would constitute a precedent for like action in numerous similar installations throughout the country.

But the Attorney General did not consent to this judgment since the United States Attorney expressly reserved upon

---

[4] Coffman v. Breeze Corporations, 323 U.S. 316, 324, 325, 65 S.Ct. 298, 89 L. Ed. 264; Congress of Industrial Organizations v. McAdory, 325 U.S. 472, 475, 65 S.Ct. 1395, 89 L.Ed. 1741.

[5] United States v. Johnson, 319 U.S. 302, 304, 63 S.Ct. 1075, 87 L.Ed. 1413.

[6] Paradise Land & Livestock Co. v. Federal Land Bank of Berkeley, 10 Cir., 147 F.2d 594; Buck's Stove & Range Co. v. American Federation of Labor, 219 U. S. 581, 31 S.Ct. 472, 55 L.Ed. 345; Dakota County v. Glidden, 113 U.S. 222, 223, 224, 5 S.Ct. 428, 28 L.Ed. 981.

[7] Hartford v. Bridgeport Trust Co., C. C., 143 F. 558.

[8] U.S.Constitution, Art. III.

[9] St. Pierre v. United States, 319 U.S. 41, 42, 63 S.Ct. 910, 87 L.Ed. 1199.

[10] United States and Interstate Commerce Commission v. Alaska Steamship Co., et al., 253 U.S. 113, 115, 40 S.Ct. 448, 64 L.Ed. 808.

[11] United States of America v. Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft, 239 U.S. 466, 475–477, 36 S.Ct. 212, 60 L.Ed. 387.

[12] People of State of California v. San Pablo & Tulare R. Co., 149 U.S. 308, 313–314, 13 S.Ct. 876, 37 L.Ed. 747, and cases cited.

[13] Southern Pacific Co. v. Eshelman, D.C., 227 F. 928.

[14] Young v. United States, 315 U.S. 257, 259, 62 S.Ct. 510, 511, 86 L.Ed. 832.

the record the right to question the recovery of defendant from the Government. The question is, if judgment enter would protest avail in a proceeding by Kaiser Company against the United States where this claim had been paid with judicial sanction?

Then it is said that the Maritime Commission has reviewed the facts and has approved the stipulation and the entry of judgment for specified amounts against the defendant, and, of course, with the full knowledge that the fact of the judgment against defendant will be enforced as an obligation of the United States.

In a case where there was a stipulation purporting to reveal the administrative practice in applying the gift tax law, the Supreme Court refused to follow or apply the practice as guiding or controlling judicial decision, saying:

"Such a stipulated definition of the practice is too vague and indefinite to afford a proper basis for a judicial decision which undertakes to state the construction of the statute in terms of the practice. Moreover, if we regard the stipulation as agreeing merely that the legal questions involved in the present case have uniformly been settled administratively in favor of the contention now made by the petitioner, it involves conclusions of law of the stipulators, both with respect to the legal issues in the present case and those resolved by the practice. We are not bound to accept, as controlling, stipulations as to questions of law." Estate of Sanford v. Commissioner of Internal Revenue, 308 U.S. 39, 50, 51, 60 S.Ct. 51, 59, 84 L.Ed. 20.

If then, it can be contended that the Maritime Commission's approval of the stipulation tends to establish the appropriate administrative practice with reference to the facts, this court finds that the practice does not mark the channel of decision, and if the Commission attempts to point out the applicable law, this court is not bound thereby.

If it were established that the Maritime Commission had made an administrative determination of the validity of this claim, then this court would have no power to review it directly nor to add to their determination the weight of judicial sanction, because no act of Congress bestows such jurisdiction upon this court. Even if we had such jurisdiction the basis of the administrative determination would have been examined anew in a case where there were actual adverse parties.[15] It is no part of the duty of the court in this proceeding to relieve the Commission of the responsibility of determining whether these are claims properly payable by the United States. Even if the sole purpose was to enter this judgment in a convenient form for use in negotiations between the Kaiser Company and the Maritime Commission, it would be improper. The Supreme Court of Virginia has held that an action for damages will not lie against a state institution against which a judgment can not be enforced simply to fix damages in order to present a claim to the legislature. Maia's Adm'r v. Eastern State Hospital, 1899, 97 Va. 507, 34 S.E. 617, 47 L.R.A. 577.

The case of Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L. Ed. 587, shows clearly that the lower courts have the responsibility to refuse to enter a judgment where there is an attempt to base jurisdiction upon consent. The rule that a consent decree for an injunction in favor of the Government may be permissible should never be extended to imply liability of the United States for payment of money in a cause between third parties.

If the United States Maritime Commission is convinced of the justice of this claim, they may act on their own responsibility and without the adventitious aid of a judgment. There will then be no apparent determination of issues of fact and law which have no basis in an actual case or controversy.

However, the court makes it plain that there are no intimations made as to the conduct of any party, attorney, agent or official of the Government in this case. But the court must not act unless it is giv-

---

15 Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U.S. 716, 723, 724, 49 S.Ct. 499, 73 L.Ed. 918.

en power, and should not act when vital interests of others might be affected.

Finally then, if all other reasons were laid aside, this is the one insuperable obstacle to the entry of this judgment. A judgment against defendant is a judgment against the United States. As Judge Dawkins says in the case above cited:

"The attempt to assert these claims in another state, because it has a longer period of limitations, certainly would work a decided prejudice, to the real defendant, the Government, if the plaintiffs, who brought their actions here, were permitted to dismiss them for the sole purpose of avoiding the effects of the delay in filing them."

Even in private litigation the Supreme Court of the United States has set up adamantine barriers against the settlement of the rights of third parties by agreement between two parties to the litigation.[16] This principle is especially applicable where the interests of the United States Government might be prejudiced because its agents are myriad and its interests are far flung and well nigh universal. It has been said:

"The objection in the case before us is, not that the proceedings were amicable, but that there is no real conflict of interest between them; that the plaintiff and defendant have the same interest, and that interest adverse and in conflict with the interest of third persons, whose rights would be seriously affected if the question of law was decided in the manner that both of the parties to this suit desire it to be." [17]

The conclusion arrived at in that case may serve here. If the court acceded to the wishes of the parties, it might be said:

"A judgment entered under such circumstances, and for such purposes, is a mere form. * * * A judgment in form, thus procured, in the eye of the law is no judgment of the court. It is a nullity, and no writ of error will lie upon it."

Unless other matter is shown, the cause will be dismissed.

---

[16] See also Meeker v. Straat, 38 Mo. App. 239, 243; Ward v. Alsup, 100 Tenn. 619, 46 S.W. 573.

[17] Lord v. Veazie, 8 How. 251, 255, 256, 12 L.Ed. 1067.