### AUTOMOBILE INS. CO. v. UNITED STATES.
#### Civ. No. 4922.

United States District Court
D. Oregon.

Jan. 2, 1950.

Lehman & Robertson, Portland, Or., for plaintiff.

Henry Hess, U. S. Atty., and Victor E. Harr, Asst. U. S. Atty., Portland, Or., for the United States.

JAMES ALGER FEE, Chief Judge.

This is an action which has been brought under the Tort Claims Act, 28 U.S.C.A. § 1346(b). The Court has been orally advised by the Assistant United States Attorney and the attorney for the claimant that a compromise has been reached by the Attorney General and the claimant. No testimony nor other record was offered, but the Court was asked to approve the compromise. In the recent case of Hubsch v. United States, 338 U.S. 440, 70 S.Ct. 225, 226, the Supreme Court quotes the statute under which these compromises are made, as follows: "The Attorney General, with the approval of the court, may arbitrate, compromise, or settle any claim cognizable under section 1346(b) of this title [suits under the Tort Claims Act], after commencement of an action thereon."

The Court further says: "We construe § 2677 as imposing on the District Court the authority and responsibility for passing on proposed compromises * * *."

Since both the statute and the highest judicial authority place the authority and responsibility of passing upon proposed compromise in this Court, action should not be taken unadvisedly or without judicial consideration. The only method by which a judicial determination of fairness of a compromise can be had is by having a trial of the matter before the Court. The inter-

---

1. This court has jurisdiction by virtue of Secs. 205 and 206 of the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, §§ 1895, 1896.

ests of the United States are involved. This Court cannot therefore be a party to a rubber stamping of the judgment of the Attorney General.

There is much precedent in this Court for the practice of settling the facts by trial. In cases of equity or admiralty, even though there be default, the Court always hears testimony before entering judgment or final order. In default cases between private parties where damages are sought, the Court hears evidence and sometimes may require the impanelment of a jury to pass upon the measure of damages to be allowed. Specifically, in compromise of actions for damages based upon personal injuries to a minor, the Court will not approve a settlement even between a guardian and the defendant without hearing testimony in open court. Again, in certain instances, a jury may be impaneled by the Court for this purpose.

In cases where an attorney fee is to be allowed by the Court, whether the cases be private or governmental, the Court has insisted upon the hearing of testimony to be sure that the fee allowed was in accordance with the practice of this district, and has likewise required the certificate of the attorney to whom the fee was to be paid, to the effect that he was charging the whole amount and that there was no agreement for compensation of forwarders, and particularly that no refund was made to a litigant.

Such a policy becomes of the highest importance when the Court is dealing with governmental agencies and allowances which are either to be made against the United States or against government funds through either the medium of an agency or the medium of a governmental corporation or by virtue of the fact that the Government has guaranteed the repayment of the claims. There is another purpose in this matter. It is for the Court to be sure that no private citizen is being oppressed by arbitrary action or undue pressure of some official. The principle holds good whether the Court is required to fix the sum in the first instance or is required only to take the responsibility for approving a compromise or settlement.

In actions brought against the United States under the War Risk Insurance Act, 40 Stat. 398, which at one time constituted a great bulk of the business of this Court, it was always insisted that, in case there was a compromise, the facts be stipulated and that findings of fact and conclusions of law be drafted and in some instances that testimony be taken to assure the Court that the judgment against the United States was not improvidently entered.

In condemnation cases, this Court has consistently heard testimony upon three different issues. The first is as to the balance of convenience as to taking of possession. The second is as to the right of immediate possession in cases where a declaration of taking was filed. And the third hearing is as to the just compensation to be allowed. Where the landowners contest, a trial is held usually with a jury. But if the government and the landowners have agreed as to just compensation, still a judicial hearing is had. As to the first two matters, the contention has sometimes been made that these were not justiciable questions on account of the positive language of the statutes. But a Court, which has the responsibility of determining whether the proper steps have been gone through to entitle the United States to proceed under the authority of the Court, may insist upon proof that the steps taken are in accordance with the facts and the law and certainly may determine whether or not the process of the Court has been abused.

On the question of whether or not the United States is paying exorbitant values for property taken by the process of judicial condemnation, this Court has insisted that testimony be given by witnesses in Court as to the nature of the things done in appraising the lands and the reasonable nature of the compensation allowed therefor. The reason for this is that the Court has a responsibility to enter a judgment of condemnation, which renders the United States liable for the payment of money, and furthermore it has been required that the Judge who signs the decree also sign the check in payment of the money. The Judges of this Court have thought it incompatible with the judicial process and the

responsibility of judicial office for them to fail to hear testimony before entering such a judgment. In one instance, involving a series of cases, my associate, Judge Mc-Colloch, felt impelled to set aside judgments which, in his opinion, had been improvidently granted against the United States, based upon the testimony of a witness who had never himself personally surveyed the property. It is true that the Appellate Court failed to sustain the setting aside of such judgment.[1] However, this holding does not affect the responsibility for holding a hearing to protect the interests of the United States and of the citizens from whom lands were taken. Such hearings were held in each of the great number of condemnation cases which passed through this Court during the war years, notwithstanding the tremendous burden thereby imposed upon the Judges. Many grave injustices were prevented by the policy of this Court. In the administrative field, likewise, it is necessary that the judicial process check upon the administrative. Here the Court has required trials of the power of an administrative agency to enforce a subpoena duces tecum by use of the judicial authority. This Court has at all times treated the issuance of the subpoena as a process of the Court, which was within the control of the Judge. Therefore, the issuance of an administrative subpoena stood on the same basis as any other civil action. This position was held by the Court of Appeals of the Ninth Circuit. Martin v. Chandis Securities Co., 9 Cir., 128 F.2d 731. Subsequently, after the decision of Mr. Justice Rutledge in the Oklahoma case,[2] the Supreme Court of the United States also adopted this position in accepting the redraft of the Civil Rules. It is true that it was not necessary to have a rule on the subject, but, the Supreme Court having adopted one, it did actually relieve the field from controversy.

Ever since the decision of Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796, where the Supreme Court held that admission to citizenship was a judicial process and the Court was required to pass upon the question of the fitness of the applicant and his attachment to the principles of the Constitution of the United States, this Court has held a hearing in every individual case, and upon that basis entered findings of fact and conclusions of law, either finding or positively denying attachment to such principles. This course of action was foreshadowed in the case of United States v. Scheurer, D.C., 55 F.Supp. 243. It illustrates the principle which this Court has consistently followed, that where the authority and the responsibility of passing upon a question, even though it has previously been passed upon by an administrative body or has been actually decided by an administrative body or where an administrative body or official recommends a compromise, that the Court has the duty to make judicial inquiry into the circumstance before passing judgment.

In another series of cases in which the United States was not a party but was ultimately liable upon contracts guaranteeing the payment of expenses by a private firm or corporation, which was thereupon authorized to compromise or pay such claims with the approval of commissions or other governmental officials who had administrative duties, the Court has held that, in the first place, there must be established facts sufficient to indicate that the Court had jurisdiction of a claim, and, in the second place, that there was reasonable ground to believe that a cause of action or a well-founded claim existed on the part of a particular plaintiff against the United States, and finally that, if such a claim existed, it was not compromised to the detriment of the claimant upon improper grounds. The Court here further took the position that this was not to be settled by pro forma proof or by stipulation of the parties, but, since the interests of the United States were involved and likewise the rights of a citizen, that the Court should be satisfied by the judicial process

1. See E. C. Shevlin Co. v. United States, 9 Cir., 146 F.2d 613.

2. Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, 166 A.L.R. 531; Federal Rules of Civil Procedure 81(a) (3), 28 U.S.C.A.

492

that there was a claim and that the settlement thereof was somewhere within the reasonable probabilities based upon facts which might, in some phases, be contested.[3]

Therefore, in this instance also, where the Court has responsibility and power to settle a question which is before it in its judicial capacity, the Court will proceed by the normal methods which are traditional with the common law and equity courts, and will take proof satisfactory to the Court, make findings of fact and conclusions of law on all basic issues, especially those relating to jurisdiction and liability. The Court can no more proceed here without such foundation for a judgment of approval than it could so proceed in a case for declaratory judgment in which the proceedings were by default. Cf. Waialua Agricultural Company, Limited, v. Maneja, 9 Cir., 178 F.2d 603.

The matter will therefore be set for pretrial conference, followed by trial and in other ways treated exactly the same as any other civil action in this Court.

3. Macklin v. Kaiser Company, Inc., D.C., 69 F.Supp. 137.