648 F.2d 660
 1981-1 Trade Cases 64,111
 UNITED STATES of America, Plaintiff-Appellee,
v.
BECHTEL CORPORATION, Bechtel Incorporated, Bechtel Power
Corporation, Bechtel International, Inc. and
Bechtel International Corporation,
Defendants-Appellants.
 No. 79-4194.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 14, 1981.
Decided June 18, 1981.
 
 Lee Loevinger, Washington, D. C., argued for defendants-appellants; Hogan & Hartson, Washington, D. C., Janet F. Bentley, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., on brief.
 William D. Coston, Washington, D. C., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before SKOPIL and FLETCHER, Circuit Judges, and EAST,* District Judge.
 SKOPIL, Circuit Judge:
 
 INTRODUCTION
 
 1
 Bechtel Corporation, Bechtel Incorporated, and certain of their subsidiaries ("Bechtel") appeal the entry of a consent judgment. The decree was entered in an antitrust action based on Bechtel's alleged participation in the Arab boycott of Israel. We conclude that the acts of the government, taken after a stipulation consenting to the judgment was filed, do not require that Bechtel be relieved from its consent. We further find that the trial court did not err in determining that the decree is in the public interest. We affirm.BACKGROUND AND PROCEEDINGS BELOW
 
 
 2
 In January 1976 the United States filed a civil action against Bechtel asserting violations of section 1 of the Sherman Act, 15 U.S.C. § 1. The complaint described the Arab boycott, whereby Arab League countries refuse to engage in commercial relations with those who engage in commerce with Israel. It alleged that Bechtel combined, conspired, and agreed with others to participate in the boycott. The government asserted that this activity restrained trade in violation of the antitrust laws, and requested declaratory and injunctive relief.
 
 
 3
 Bechtel denied the complaint's material allegations and raised eleven defenses, including estoppel, inapplicability of the antitrust laws, government sanction, sovereign compulsion, act of state, non-justiciable controversy, national interest, and failure to state a cause of action.
 
 
 4
 In January 1977 the parties proposed a consent decree and filed it with the district court, along with the competitive impact statement required by the Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16. The parties also filed a stipulation. The stipulation provided that the proposed judgment could be entered
 
 
 5
 "upon the motion of either party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act (15 U.S.C. §§ 16(b) et seq.) and without further notice to any party or other proceedings, provided that plaintiff (the government) has not withdrawn its consent which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on defendants and by filing that notice with the Court."
 
 
 6
 On January 19, 1977 the proposed decree and the government's competitive impact statement were published in the Federal Register and certain newspapers. In the following sixty days the government received comments on the proposed decree from the public. The sixty-day period for public comment, provided by 15 U.S.C. § 16(d), ended on April 3, 1977.
 
 
 7
 In June 1977 Congress passed the Export Administration Amendments ("EAA") regarding foreign boycotts. 50 U.S.C.App. §§ 2401-13. Department of Commerce regulations interpreting the new law were drafted, published and finally issued in January 1978.
 
 
 8
 On March 24, 1978 the government published its response to the comments received from the public on the proposed consent decree. On May 10, 1978 it moved for entry of the proposed final judgment.
 
 
 9
 On June 30, 1978 Bechtel filed its opposition to the entry of the decree. Bechtel argued that: (1) there was no basis for entering the judgment because the government had violated the stipulation by failing to comply with the APPA; (2) Bechtel's consent was vitiated by the new interpretations the government was applying to the decree; and (3) entry of the decree was no longer in the public interest because of the conflicting interpretations and the intervening passage of the Export Administration Amendments.
 
 
 10
 The district court concluded that the United States had not violated the APPA, or at least that Bechtel had not shown sufficient prejudice from any such violation to nullify its consent. It also determined that the interpretations of the proposed judgment the government had advanced in its response to public comments did not repudiate the agreement or amount to a withdrawal of consent. Further, the court found the EAA no bar to entry of the decree. Finally, the district court found the proposed judgment in the public interest, and ordered it entered. Bechtel appealed.
 
 
 11
 We must decide: (1) whether the district court had jurisdiction to enter the decree; (2) whether the government violated the provisions of the APPA; (3) if so, whether the violation vitiated the stipulation of consent; (4) whether the interpretations of the decree presented in the government's response to public comments amounted to a repudiation by the government or relieved Bechtel of its consent; (5) what factors must be considered in determining whether the entry of a consent judgment in an antitrust case is in the public interest; and (6) whether entry of this decree is in the public interest.
 
 DISCUSSION
 
 12
 Decrees entered by consent may be reviewed on appeal where there is a claim of lack of actual consent or a lack of subject matter jurisdiction. Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587 (1928). But a decree that " 'appears by the record to have been rendered by consent, is always affirmed, without considering the merits of the cause.' " Id. at 324, 48 S.Ct. at 314 (quoting Nashville, C. & St. L. R. Co. v. United States, 113 U.S. 261, 5 S.Ct. 460, 28 L.Ed. 971 (1885)).
 
 
 13
 We must consider only the propriety of the entry of the decree. The merits of the judgment are not before us, except for two limited purposes. The decree may have been beyond the district court's jurisdiction to enter or the substance of the decree may be contrary to the public interest.
 
 I. Jurisdiction
 
 14
 Bechtel argues that its alleged boycott activities were beyond the scope of the antitrust laws. Bechtel contends this means it was beyond the power of the district court to enter the decree or contrary to the public interest for it to do so.
 
 
 15
 The jurisdictional part of this argument "fails to distinguish an error in decision from the want of power to decide." Swift & Co., supra, 276 U.S. at 330, 48 S.Ct. at 316. If Bechtel is correct in its assertion that the boycott is beyond the reach of the antitrust laws, it proves at most that the complaint failed to state a cause of action. Such a failure is not a jurisdictional defect. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).
 
 
 16
 A judgment dismissing an action for failure to state a claim is a judgment on the merits. In dismissing an action a court must assume jurisdiction. Id. Any error by the court in refusing to enter such a judgment might be corrected on appeal if Bechtel had not waived the defect by its consent. Swift & Co., supra, 276 U.S. at 331, 48 S.Ct. at 316-317.
 
 
 17
 Bechtel was not required to give its consent to the judgment it now protests. It had a right to litigate the applicability of the antitrust laws to its alleged participation in the Arab boycott. It voluntarily surrendered that right. We cannot decide whether the complaint stated a cause of action without violating the rule against reviewing the merits of consent decrees.
 
 II. Consent
 
 18
 Bechtel contends that the judgment must be vacated because the only basis for its entry, consent, was lacking. In the face of the stipulation Bechtel concededly entered, we must interpret this as an argument that the government withdrew its consent or repudiated the agreement, or that events occurring after the stipulation equitably require that Bechtel be relieved of its consent.
 
 
 19
 A. Antitrust Procedures and Penalties Act.
 
 
 20
 The stipulation filed by the parties called for the consent decree to be entered " at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act " Bechtel argues that compliance with the APPA was a condition of its consent that was never met. Alternatively, Bechtel contends that the government's violation of the stipulation entitled it to relief from its consent.
 
 
 21
 Bechtel asserts that the government violated the APPA by failing to file its responses to public comment on the proposed decree until nearly one year after the close of the comment period. The APPA requires a proposed consent decree to be filed in the district court and published in the Federal Register "at least 60 days prior to the effective date of such judgment." 15 U.S.C. § 16(b). It also provides that "(a)ny written comments relating to such proposal and any responses by the United States thereto, shall also be filed with such district court and published by the United States in the Federal Register within such sixty-day period." Id. (Emphasis added.)Section 16(d) describes the public comment and government response procedure in more detail. It provides in part:
 
 
 22
 "(d) During the 60-day period as specified in subsection (b) of this section, and such additional time as the United States may request and the court may grant, the United States shall receive and consider any written comments relating to the proposal for the consent judgment submitted under subsection (b) of this section. * * * At the close of the period during which such comments may be received, the United States shall file with the district court and cause to be published in the Federal Register a response to such comments."
 
 
 23
 (Emphasis added.)
 
 
 24
 Bechtel contends that the government had to file and publish its response to public comments within 60 days of the filing and publication of the proposed decree, unless it received an extension of time from the court. The government argues, and the district court agreed, that the sixty-day period is a minimum time for public comment between publication and entry of a proposed consent decree.
 
 
 25
 The government's interpretation of section 16(b) ignores the plain language of the statute. Not only public comments, but also the United States' responses are to be filed within the sixty-day period. While the phrase "(a)t the close of the period" in section 16(d) may indicate that the government is allowed some additional time after the end of sixty days to prepare and file responses, it does not mean at any time after the close of the period.
 
 
 26
 The government's failure to file its responses within the time contemplated by the APPA does not mean, however, that the decree could not be entered. Completion of APPA procedures was required before the judgment could be entered. This requirement was established by the terms of the stipulation, as well as by operation of the statute itself. But we decline to read the stipulation or the statute as making strict technical compliance with the APPA a condition to final entry of the decree.
 
 
 27
 The structure of the statute and its legislative history indicate that Congress was primarily concerned with allowing sufficient time for comment and response. The time provisions were not established to prevent open-ended scrutiny of a proposed consent decree. It would not advance the purposes of the statute to adopt a rule that any failure strictly to meet a time limitation precludes entry of a consent decree.
 
 
 28
 Bechtel has not persuaded us that the phrase in the stipulation "after compliance with the requirements of the Antitrust Procedures and Penalties Act" should be read any more strictly than the statute itself. The noncompliance did not go to the essence of the stipulation. Bechtel admitted at argument that it would not have objected to entry of the decree based on the lapse of time alone. Bechtel has not shown any prejudice to it arising from the government's failure to file its responses to public comments until nearly one year after the close of the comment period.
 
 
 29
 Bechtel argues that as a result of the government's delay, it has become enmeshed in a conflict between the Department of Justice and the Department of Commerce over the proper response to foreign boycotts and the interpretation of the Export Administration Amendments. Bechtel has not shown how the timely filing of the government's response to public comments would have avoided this conflict, if any. Nor has Bechtel shown that it has less protection because of the delayed filing. The district court specifically declined to decide whether the EAA would require modification of the decree after its entry.
 
 
 30
 We conclude that the government's failure strictly to comply with the APPA time requirements does not entitle Bechtel to relief from its consent.
 
 III. Repudiation
 
 31
 Bechtel asserts that the government breached the stipulation and "destroyed consent" by repudiating the decree's meaning. The repudiation is said to have occurred when the government filed and published its response to public comments on the proposed decree. Bechtel alleges that the government has interpreted the judgment in a manner inconsistent with the understanding reached by the parties in their negotiations and expressed in the government's competitive impact statement. Bechtel concedes that no words have been altered, but argues that the government's interpretation changed the decree.
 
 
 32
 The government says that it has not changed its interpretation of the judgment, although it concedes that it made an incorrect statement in the competitive impact statement it filed with the proposed decree. The government characterizes the interpretation offered in its response to public comments as an effort to correct and clarify its obvious earlier mistake, not a change in position. The district court found that the government had not repudiated the proposed judgment.
 
 
 33
 Bechtel's contention imputes too much power to the government and too little power to the court. The government cannot unilaterally change the meaning of a judgment. When a consent judgment is being interpreted for enforcement purposes a court may rely on certain aids to construction, including the circumstances surrounding the formation of the order. United States v. ITT Continental Baking Co., 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975). In a later enforcement proceeding Bechtel may persuade a court that its interpretation of the decree is the correct one.
 
 
 34
 Bechtel's argument is also premature. No court has yet interpreted the judgment, in accordance with the government's construction or otherwise. We are addressing the much narrower issue of the entry of the decree. The language of the decree entered by the district court is precisely that to which Bechtel agreed. The government has not repudiated that language and Bechtel is not entitled to relief from its consent.
 
 
 35
 Bechtel's arguments concerning the effect of the EAA on the decree are also premature. The court below specifically declined to modify the decree before its entry on the grounds that such modification should await entry of judgment and development of matters beyond the scope of the application for entry of judgment. The district court did not decide that the EAA would require no modification of the decree. The court did not abuse its discretion in declining to decide the matter at the time of entry of judgment. The modification provisions of the judgment itself could not become operative until the judgment was entered.
 
 IV. Public Interest
 
 36
 Bechtel asserts that the district court applied the wrong test in determining whether the consent decree was in the public interest. Furthermore, Bechtel argues, the decree is not in the public interest and the district court erred in so finding.
 
 
 37
 A. Scope of Inquiry.
 
 
 38
 The district court stated as its "guidelines for consideration" whether the relief provided for in the proposed judgment was adequate to remedy the antitrust violations alleged in the complaint. The court concluded that the relief was adequate. Bechtel contends this view was erroneously narrow.
 
 
 39
 The APPA requires a district court to determine that consent judgment is in the public interest before it may be entered. 15 U.S.C. § 16(e). The statute suggests considerations that may be relevant:
 
 
 40
 "For the purpose of such determination, the court may consider
 
 
 41
 (1) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration or relief sought, anticipated effects of alternative remedies actually considered, and any other considerations bearing upon the adequacy of such judgment;
 
 
 42
 (2) the impact of entry of such judgment upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial."
 
 Id. (Emphasis added.)
 
 43
 The statute suggests that a court may, and perhaps should, look beyond the strict relationship between complaint and remedy in evaluating the public interest. We cannot agree that a district court should engage in an unrestricted evaluation of what relief would best serve the public.
 
 
 44
 The balancing of competing social and political interests affected by a proposed antitrust consent decree must be left, in the first instance, to the discretion of the Attorney General. See United States v. National Broadcasting Co., 449 F.Supp. 1127 (C.D.Cal.1978). The court's role in protecting the public interest is one of insuring that the government has not breached its duty to the public in consenting to the decree. The court is required to determine not whether a particular decree is the one that will best serve society, but whether the settlement is "within the reaches of the public interest." Id. at 1143 (quoting United States v. Gillette Co., 406 F.Supp. 713, 716 (D.Mass.1975)). More elaborate requirements might undermine the effectiveness of antitrust enforcement by consent decree.
 
 
 45
 We conclude that the inquiry undertaken by the district court was appropriate in scope. The record shows that the district court considered potential conflicts between the EAA and the decree and the government's allegedly inconsistent interpretations in its evaluation of the public interest. The only matters the court expressly refused to consider were contentions going to the merits of the underlying claims and defenses. This refusal was proper.
 
 
 46
 B. Merits.
 
 
 47
 Finally, Bechtel argues that the district court erred in determining that the decree is in the public interest. Bechtel contends that entry of the judgment is inimical to the public interest because it increases uncertainty as to what conduct Bechtel may engage in, it will encourage litigation by others because of its ambiguity, it conflicts with the balance of national and international interests struck by Congress and the executive branch and embodied in the EAA, it is unnecessary because of the EAA, it enjoins conduct beyond the reach of the antitrust laws, it implicitly condones the government's failure to comply with the APPA, and the public would benefit from trial of the issues.
 
 
 48
 In the court below, and here, Bechtel offered only conclusory statements that increased litigation is likely as a result of this decree. Such statements are not sufficient to show that entry of the decree is not in the public interest. Likewise, Bechtel has not shown how the public would benefit from a trial of the issues any more than it would in any case that is ended by settlement.
 
 
 49
 Any uncertainty Bechtel is experiencing about what it may or may not do under the decree is not necessarily a matter of the public interest. Furthermore, the uncertainty is no greater than that which would exist without a decree at all. Bechtel is always entitled to the protection of a judicial interpretation of the judgment. Similarly, any conflict between the EAA and the decree is not relevant to a determination of the public interest. The decree contains modification provisions. If Bechtel is entitled to substantive changes in the decree it may seek them.
 
 
 50
 It is not contrary to the public interest, as contemplated by the APPA, to enter a decree that is not necessary, or that grants relief to which the government might not be strictly entitled. The public does not suffer because Bechtel consented to limitations on its activities that could not otherwise be imposed. Bechtel cannot transform self-interest to public interest by pointing to the importance of its economic activity to society. Such an argument would apply to most antitrust consent decrees.
 
 
 51
 Entry of the decree in the face of the government's failure strictly to observe the APPA time requirements does not condone or sanction such a violation. It would not serve the public interest to assure government compliance with the time limitations by refusing to enter the decree. The remedy is far too drastic and indirect. Bechtel has shown no prejudice from the delay, and the public benefit from entry of the decree far outweighs any detriment from the appearance of sanctioning a wrong.
 
 CONCLUSION
 
 52
 Bechtel agreed to the entry of the judgment from which it appeals. Events occurring since it stipulated its consent do not entitle it to relief. It may seek protection through judicial interpretation or modification of the judgment. The entry of the judgment itself was proper and is AFFIRMED.
 
 
 
 *
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation