UNITED STATES of America, Plaintiff,

v.

AIRLINE TARIFF PUBLISHING COMPANY, et al., Defendants.

Civ. A. No. 92–2854 SSH.

United States District Court, District of Columbia.

Nov. 1, 1993.

Mary Jean Moltenbrey, Antitrust Div., Dept. of Justice, Washington, DC, for plaintiff.

Mark Leddy, Michael J. Byrnes, Cleary, Gottlieb, Steen & Hamilton and Jonathan B. Hill and Rachel I. Wollitzer, pro hac vice, Dow, Lohnes & Albertson, Washington, DC, for Airline Tariff Pub.

James V. Dick and Marshall Sinick, Squires, Sanders & Dempsey, Washington, DC, for Alaska Airlines.

Peter D. Isakoff, Douglas Bertrand Snyder, Weil, Gotshal & Manges, Washington, DC and Michael P. Kenny, pro hac vice, Alston & Bird, Atlanta, GA, for American Airlines.

Donald L. Flexner and Peter Bushfield Work, Crowell & Moring, Washington, DC, for Continental/Northwest.

John Louis Longstreth and James R. Weiss, Preston Gates Ellis & Rouvelas Meeds, Washington, DC, for Delta.

James Edward Anklam, Jones, Day, Reavis & Pogue, Washington, DC, and Robert H. Rawson, Jr. (pro hac vice) and Thomas Demitrack (pro hac vice), Jones, Day, Reavis & Pogue, Cleveland, OH, for TWA.

Debra A. Valentine, O'Melveny & Meyers, Washington, DC and Henry R. Thurmann (pro hac vice), O'Melveny & Meyers, Los Angeles, CA, for United.

Charles R. Rule and Thomas Overton Barnett, Covington & Burling, Washington, DC, for USAir.

Burton J. Rubin (pro hac vice), American Soc. of Travel Agents, Inc., Alexandria, VA, for amicus curiae.

## OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court for a determination of whether a proposed final judgment is in the "public interest," and thus should be entered by the Court as a final judgment with respect to two of the defendants. After a thorough review of all of the materials submitted for the Court's consideration, the Court finds that the proposed final judgment is in the "public interest" as contemplated by the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)–(h) (the "Tunney Act").

### Background

On December 21, 1992, the government filed a complaint, which randomly was assigned to the late Judge Revercomb, charging eight major domestic airlines and the Airline Tariff Publishing Company ("ATP") with violations of Section One of the Sherman Act, 15 U.S.C. § 1.[1] Count One of the complaint charges defendants with agreeing to fix prices by increasing fares, eliminating discounted fares, and setting fare restrictions. This count alleges that defendants reached these agreements through the use of defendant ATP's fare dissemination services; the government contends that defendants used these services to exchange proposals, negotiate fare changes, and trade fare increases in one or more markets for fare increases in other markets. Count Two of the complaint alleges that defendants agreed to create, maintain, operate, and participate in the ATP dissemination system in a manner that unnecessarily facilitates the ability of the airline defendants and their co-conspirators to coordinate changes to their fares. The government contends that as a result of these agreements, consumers have paid higher prices for airline tickets. The complaint seeks an injunction barring defendants from entering into agreements with one another with respect to fares, and from disseminating information concerning proposed changes to fares that enables defendants to increase prices collusively and illegally.

In conjunction with the filing of the complaint, the government filed a proposed final judgment, a competitive impact statement, and a stipulation signed by two of the defendants, United Air Lines, Inc. ("United") and USAir, Inc. ("USAir") (the "settling defendants"), for entry of the proposed final judgment. Under the Tunney Act, the Court may not enter the proposed final judgment until the government has complied with certain procedures. Accordingly, on December 29 and 30, 1992, respectively, United and USAir filed with this Court a description of written and oral communications made on their behalf with the government in relation to the proposed final judgment. See 15 U.S.C. § 16(g). Beginning on January 3, 1993, and continuing for seven days over a period of two weeks, a summary of the terms of the proposed final judgment, the competitive impact statement, and directions for the submission of written comments relating to the proposal were published in *The Washington Post*. See 15 U.S.C. § 16(c). The proposed final judgment and competitive impact statement were published in the Federal Register on January 12, 1993. See 15 U.S.C. § 16(b). The 60-day period for public comments commenced on January 13, 1993, and expired on March 15, 1993. On April 8, 1993, the government submitted its response to the public comments. See 15 U.S.C. § 16(d). Thus, the Court finds that the government has complied with all of the procedural requirements of the Tunney Act.

---

1. The eight airlines are: Alaska Airlines, Inc., American Airlines, Inc., Continental Airlines, Inc., Delta Airlines, Inc., Northwest Airlines, Inc., Trans World Airlines, Inc., United Airlines, Inc., and USAir, Inc. The first six, along with ATP, are hereinafter referred to as the "litigating defendants."

Over 700 comments were submitted, the overwhelming majority of which oppose the entry of the proposed final judgment. Judge Revercomb undertook an exhaustive review of both the submissions and the parties' responses thereto. On May 24, 1993, Judge Revercomb ordered the parties, and the American Society of Travel Agents ("ASTA"), who is participating as an *amicus curiae,* to submit written responses to a series of questions designed to clarify several of the Court's remaining concerns. The parties submitted their responses to the Court's Order on June 28, 1993, and their replies on July 12, 1993.

On July 12, 1993, the case was transferred to the undersigned. (Judge Revercomb died on August 1, 1993.) Upon review of the voluminous record, the Court finds that it possesses sufficient information to make the public interest determination required by the Tunney Act. *See* 15 U.S.C. § 16(e)–(f).[2]

*The Public Interest*

■ The Tunney Act serves two main purposes. First, through its procedural requirements, it grants the public the opportunity to scrutinize and comment upon proposed decrees and thereby eliminates excessive secrecy from the process. Second, it ensures that the economic power and political influence of antitrust violators do not unduly influence the government into entering into consent decrees that do not effectively remedy antitrust violations. *United States v. American Tel. and Tel. Co.,* 552 F.Supp. 131, 148 (D.D.C.1982), *aff'd sub nom., Maryland v. United States,* 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983).

To implement this second purpose, the Act requires that before a proposed consent judgment submitted by the United States in

an antitrust action may be approved by the Court, the Court must determine that "the entry of such judgment is in the public interest." 15 U.S.C. § 16(e). The statute does not explicitly define "public interest." It does, however, list factors that the Court may consider in making its public interest determination. These factors are:

(1) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration or relief sought, anticipated effects of alternative remedies actually considered and any other considerations bearing upon the adequacy of such judgment;

(2) the impact of entry of such judgment upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e).

■ Extrapolating from these factors, courts have developed a two-prong public interest inquiry. First, courts inquire as to whether the proposed relief effectively will foreclose the possibility that antitrust violations will occur or recur. *See American Tel. and Tel.,* 552 F.Supp. at 150.[3] Second, courts consider whether the relief impinges upon other public policies. *See, e.g., United States v. BNS, Inc.,* 858 F.2d 456, 463 (9th Cir.1988) ("the statute clearly indicates that the court may consider the impact of the consent judgment on the public interest, even though that effect may be on an unrelated sphere of economic activity"); *American Tel. and Tel.,* 552 F.Supp. at 151. Thus, "[i]f the decree meets the requirements for an antitrust remedy—that is, if it effectively opens

**2.** Several of the litigating defendants and ASTA contend that a hearing is necessary for the Court to render its public interest determination in this case. The Tunney Act does not require the Court to hold such a hearing. *See* S.Rep. No. 93–298, 93d Cong., 1st Sess. 6 (1973); H.R.Rep. No. 93–1463, 93d Cong., 2d Sess. 8 (1974), U.S.Code Cong. & Admin.News 1974, 6535, 6539 ("It is not the intent of the Committee to compel a hearing or trial on the public interest issue. It is anticipated that the trial judge will adduce the

necessary information through the least time-consuming means possible."). The Court does not find that a hearing is necessary in this case.

**3.** Accordingly, "the Court may at the relief stage prohibit practices which have not been found unlawful if such a prohibition is necessary to avoid the recurrence of monopolization." *Id.* at 150 n. 80 (citing *United States v. United Shoe Mach. Corp.,* 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968)).

the relevant markets to competition and prevents the recurrence of anticompetitive activity, all without imposing undue and unnecessary burdens upon other aspects of the public interest—it will be approved." *Id.* at 153 (footnote omitted).[4]

In applying this test, the Court's review is somewhat limited. "The balancing of competing social and political interests affected by a proposed antitrust consent decree must be left, in the first instance, to the discretion of the Attorney General." *United States v. Bechtel Corp.,* 648 F.2d 660, 666 (9th Cir.), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 638, 70 L.Ed.2d 617 (1981). Thus the Court need not find that the proposed decree is the best possible solution, but only that it is "within the reaches of the public interest." *United States v. Gillette Co.,* 406 F.Supp. 713, 716 (D.Mass.1975); *see also Bechtel,* 648 F.2d at 666; *United States v. Gillette Co.,* No. 90-0053, 1990 U.S.Dist. LEXIS 9530, at 2 (D.D.C.1990); *American Tel. and Tel.,* 552 F.Supp. at 151; *United States v. National Broadcasting Co.,* 449 F.Supp. 1127 (C.D.Cal. 1978).

### The Proposed Final Judgment

■ The government alleges that defendants have used the ATP fare dissemination system in a manner that enables them to reach price-fixing agreements or unnecessarily to facilitate fare coordination. The proposed final judgment is designed to protect against the continuance of such behavior either through the use of the ATP fare dissemination system, or through any similar mechanism. The proposed final judgment contains several categories of prohibited conduct. Section IV(A) contains general prohibitions on agreements between airlines "to fix, establish, raise, stabilize, or maintain any fare." Other sections prohibit or restrict specific conduct. Section IV(B) bans the use of first ticket dates. Section IV(C) significantly restricts the use of last ticket dates;

the settling defendants can continue to use last ticket dates only if they advertise such dates in media of general circulation or through mass mailings in a manner designed to reach directly a meaningful number of likely potential customers. Also prohibited, through sections IV(C) and (E), is the use of devices such as footnote designators to link markets, coordinate fare changes, or otherwise communicate connections between fares. In addition, the proposed final judgment bans fares that are intended "solely to communicate a defendant airline's planned or contemplated fare or contemplated changes to fares." Section IV(D). Finally, section IV(F) prohibits the use of fare codes to convey information other than fare class or terms and conditions of sale or travel.

The proposed final judgment does not, however, prevent the settling defendants from disseminating currently available fares through ATP, from advertising currently available fares to consumers, or from offering for sale fares good only for future travel. Nor does the proposed final judgment prohibit the settling defendants from instituting programs such as fare guarantees to protect consumers from unanticipated fare changes. The settling defendants also can continue to give consumers general information on impending fare changes. Since early 1993, the settling defendants and American Airlines, Inc., have been complying with most of the substantive terms of the proposed final judgment.[5]

The Court finds that the proposed final judgment is in the public interest as contemplated by the Tunney Act. First, the proposed final judgment is likely to reduce the potential for anticompetitive behavior. The proposed final judgment appears to encompass all the relief that the government seeks in its complaint; it prohibits both behavior that the government perceives to be a current antitrust violation and behavior that could enable the settling defendants to devise

---

4. The Court's inquiry is confined solely to the question of remedies; whether the government ultimately could prove liability at trial is irrelevant to the public interest determination. *See, e.g., American Tel. and Tel.,* 552 F.Supp. at 150; *United States v. Gillette Co.,* 406 F.Supp. 713, 716 n. 2 (D.Mass.1975).

5. Two airlines that are not involved in this litigation—Southwest Airlines, Inc., and America West, Inc.—also have been complying substantially with the terms of the proposed final judgment.

similar methods through which to engage in anticompetitive behavior.[6] Nor is it likely that the consent decree will have other anti-competitive effects. The litigating defendants suggest that the proposed final judgment would place small airlines at a competitive disadvantage as compared to the large airlines, and would raise the advertising costs of those airlines bound by its terms. The Court finds these contentions unpersuasive. The Court does not agree that the proposed final judgment will increase significantly the cost of data dissemination because the proposed final judgment does not restrict the operations of ATP in a way that should affect its costs. Nor is it likely that the proposed final judgment will raise significantly the advertising costs of the complying airlines; although the consent decree does require airlines to advertise before they can use last ticket dates, there is no requirement that the airlines use such dates.[7] Finally, the Court finds that none of the alternative remedies proposed would provide as effective a remedy for the alleged antitrust violations as the proposed final judgment. Accordingly, the Court finds that the proposed final judgment meets the requirements for an effective antitrust remedy.

The effect of the proposed final judgment in remedying antitrust violations is, however, only part of the Court's inquiry. The Court also may consider the effect of the proposed final judgment on other aspects of the public interest. The majority of comments received by the Court address this other concern: travel agents, consumer groups, individual consumers, and the House Committee on Public Works and Transportation believe that the ban on the use of first ticket dates, and the restrictions on the use of last ticket dates, is likely to harm the public.[8] These groups argue that these prohibitions will deprive consumers of valuable information and limit their flexibility in making airline reservations because they will increase the unpredictability of fares. They further contend that this deprivation and loss of flexibility will decrease the ability of travel agents to service their customers. This, they argue, will effect a loss of consumer good will that will cause negative repercussions for both the travel agent industry and the airline travel industry in general.

The government disputes the likelihood that such drastic, negative consequences will occur. First, they argue that first and last ticket dates currently are of limited value to consumers. The government's antitrust theory rests on the assumption that both first and last ticket dates are used primarily as a tool of negotiation. As such, they are constantly changing and cannot in reality be relied upon by consumers in making airline ticket purchasing decisions. In addition, the government contends that the airlines could protect consumers from unanticipated fare increases through fare guarantees. Moreover, the government notes that several airlines have been complying substantially with the terms of the proposed consent decree for approximately nine months and there has been no evidence of substantial harm to consumers, travel agents, or the complying airlines.

The Court believes that both the position of the government and the positions of those opposing the consent decree have surface merit. Because the Court is dealing with theories and probabilities, it is difficult to predict which ultimately will prove correct. It is evident that the government considered

---

6. None of the comments opposing the entry of the consent decree suggests that the government was improperly influenced by the economic power of the settling defendants to accept significantly less relief than could be won through trial.

7. The government contends that last ticket dates are used primarily to signal prices and negotiate with other airlines and thus have limited value to consumers. If they are of limited value to consumers, the airlines will not find it necessary to continue their use and thus will not need to incur the advertising costs associated with their use. Although the Court does not have enough evidence at this time to evaluate this contention, in the context of a Tunney Act inquiry it is appropriate for the Court to defer to such conclusions as it considers whether the proposed remedies are appropriate.

8. Although some of these commentators have raised other objections to the entry of the proposed consent decree, the Court does not find that any of these objections affect its conclusion that the proposed final judgment is within the reaches of the public interest.

and rejected the arguments raised in the public comments when fashioning the proposed final judgment. Moreover, the Court finds it instructive that during the months that several airlines have been complying with the consent decree, there has been little evidence of harm either to those complying airlines or to the travel agents. Thus the Court finds it appropriate to defer to the balance struck by the government. Therefore, the Court finds that the proposed final judgment meets the requirements for an effective antitrust remedy without imposing undue and unnecessary burdens on other aspects of the public interest.

Accordingly, the Court finds that the entry of the proposed final judgment is in the public interest.