UNITED STATES of America

v.

**PEARSON PLC, et al., Defendants.**

**No. Civ.A. 98–2836(JR).**

United States District Court,
District of Columbia.

June 30, 1999.

---

Joyce L. Bartoo, John W. Poole, David C. Kully, Ahmed E. Taha, U.S. Department of Justice, for U.S.

Robert S. Schlossberg, Thomas J. Klotz, Morgan, Lewis & Bockius LLP, Washington, DC, for defendants Pearson plc and Pearson Inc.

## MEMORANDUM

ROBERTSON, District Judge.

Before the Court for the public interest determination required by the Tunney Act is a proposed final judgment giving effect to the terms of an antitrust consent decree between and among the United States Government, Pearson plc, Pearson Inc., and Viacom International, Inc. It appears, upon examination in light of the violations charged in the complaint, that the terms of the decree are not ambiguous, that the proposed enforcement mechanism is adequate, that third parties will not be "positively injured," and that the decree does not make a mockery of judicial power. The final judgment is accordingly **approved.**

### FACTS

Pearson and Viacom entered into an agreement for Pearson's purchase of certain educational publishing businesses from Viacom. The Department of Justice objected to the transaction, taking the position that the acquisition of businesses engaged in the marketing, development and sale of elementary school science materials and textbooks used in over thirty college-level courses would substantially lessen competition in the identified markets and result in "schools and students paying higher prices for textbooks and other educational materials, a reduction in the value or quantity of ancillary materials received by students and teachers, and a reduction in the support services offered," in violation of Section 7 of the Clayton Act (15 U.S.C. § 18 (1994)). (Complaint filed November 23, 1998, at 2.)

The consent decree proposed by the parties resolves the government's antitrust objections by requiring Pearson to divest certain product lines in the identified market areas to other viable competitors. The transaction contemplated by the consent decree has indeed already been consummated, and Pearson has already sold, with the government's approval, nearly all of the assets covered by the proposed consent decree. These steps were taken immediately after the filing of the proposed consent decree and without awaiting Tun-

ney Act approval. Nevertheless, the Tunney Act (Antitrust Procedures and Penalties Act, codified as 15 U.S.C. § 16(a)–(i) (1994)) requires that, before this *fait accompli* can be blessed by the entry of a final judgment, it must be found to be in the public interest.

The parties have scrupulously adhered to the "sunshine" requirements of the Tunney Act: The proposed final judgment was duly published in the Federal Register. *See* 63 Fed.Reg. 70422 (1998). The sixty-day period for the submission of public comments elapsed. The comments received (four in number) and the government's response to them were published in the Federal Register. *See* 64 Fed.Reg. 24173 (1999).

## ANALYSIS

The Tunney Act provides that, when making the required public interest determination, the court may consider:

(1) the competitive impact of such judgment, including termination of the alleged violations, provisions for enforcement and modification, duration or relief sought, anticipated effects of alternative remedies actually considered, and any other considerations bearing upon the adequacy of such judgment.

(2) the impact of entry of such judgment upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e)(1)–(2).

■ The requirement of a public interest determination was added to the Tunney Act in 1974, by amendments enacted in part to remedy the practice of "judicial rubber stamping" of proposals submitted by the Justice Department.[1] Appellate decisions issued since 1974, however, have made it clear that the public interest inquiry authorized by the Tunney

Act is so limited in scope as to be very nearly a ministerial task. "Public interest" is to be defined in accordance with antitrust laws. *United States v. AT & T*, 552 F.Supp. 131, 149 (D.D.C.1982), *aff'd sub. nom. Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). Settlements that fall "within the *reaches* of the public interest" should be approved. *United States v. Western Electric Co.*, 900 F.2d 283, 309 (D.C.Cir. 1990) (emphasis in original) (citing and quoting *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir.1981), in turn quoting *United States v. Gillette Co.*, 406 F.Supp. 713, 716 (D.Mass.1975)). The court is not to review allegations and issues that were not contained in the government's complaint, *United States v. Microsoft Corp.*, 56 F.3d 1448, 1459 (D.C.Cir. 1995), or base its public interest determination on antitrust concerns in markets other than those alleged in the government's complaint, *United States v. BNS Inc.*, 858 F.2d 456, 462–63 (9th Cir.1988).

■ The role that remains for a district court is to "examine the decree *in light of the violations charged in the complaint* and ... withhold approval *only* [a] if the terms appear ambiguous, [b] if the enforcement mechanism is inadequate, [c] if third parties will be positively injured, or [d] if the decree otherwise makes 'a mockery of judicial power.'" *Massachusetts School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 783 (D.C.Cir.1997) (quoting *Microsoft* at 1462) (emphasis added).

### a. *Clarity or ambiguity of the decree*

■ The proposed final judgment sets forth specific and precise remedies for the antitrust concerns identified in the government's complaint. It requires the divestiture of one of two school science product lines, as well as the college textbooks, to other companies which, the Justice Department is satisfied, will publish and mar-

---

1. *See* H.R.Rep. No. 93–1463, at 8–9, 12    (1974).

ket the divested products. (Final J. at 5–6). It specifies, by title and/or description of products, what must be divested. (Final J. at 19–23). The final judgment is not ambiguous.

b. *Adequacy of the enforcement mechanism*

The proposed final Judgment, (Final J. at 18), ensures that the Court will have the jurisdiction and "power to ensure that the parties comply in full with the principles mandated by the decree ... in their conduct after divestiture." *AT & T* at 214. Its compliance mechanisms are adequate.

c. *Impact upon third parties*

The complaint identifies teachers, schools, and students as parties likely to suffer antitrust injury from the lessening of competition in the elementary school science program and college textbook markets. (Compl. at 2). By requiring divestiture to companies that will be viable competitors, the final judgment will ensure that such injury does not occur.

Four comments were submitted to the Justice Department in response to publication of the proposed final judgment.

One comment, submitted by three college professors, complains that the proposed final judgment fails to require Pearson to divest elementary school *mathematics* products, asserting that Pearson and Viacom are two of only a few competitors in that market as well. (Pl.'s Resp. To Public Comments, Attach. 4.)

The government's response admonishes, however, that "it is not the role of the Court in a Tunney Act proceeding to go beyond the Complaint 'to evaluate claims that the government did not make and to inquire as to why they were not made.'" (Resp. at 8 (quoting *Microsoft* at 1459)).

A second comment, by a small publisher of educational textbooks, asserts that the "divested products will ultimately land in the hands of one of the other giants of our industry and thus the impact of [the] de-

cree will be negligible." (Resp., Attach.3). The publisher urges the Justice Department to "take [its] decree one step further and allow some of the smaller players in the industry an opportunity to purchase [the divested] products." *Id.*

The government's response rightly points out that the final judgment does not "exclude—or give any preference to—any kind of publisher from consideration as a purchaser.... So long as the United States is satisfied that it has the ability and intention to publish and market the divested products as viable, ongoing businesses." (Resp. at 6–7).

Two comments by textbook authors, one of whom has written a textbook subject to divestiture under the proposed final judgment, assert that the divestiture will likely interrupt production schedules for their works and impair the overall marketability of those divested product lines. (Resp., Attach. 1 and 2).

The government's response explains that the divestiture is essential to maintaining an adequate level of competition and points out that the proposed final judgment contains provisions designed to protect against undue harm to the work of the authors, including requirements to ensure that the purchasers of the divested products maintain competitiveness, as well as a "hold harmless" provision which mandates that until divestiture is completed Pearson/Viacom must maintain funding, development, and marketing support to ensure sales levels of products are at least maintained. (Final J. at 13). The final judgment also directs Pearson to give the purchasers of the divested textbooks information about the employees responsible for the editorial content, marketing, production, and design of the divested textbooks. (Final J. at 8).

Ultimately, however, these concerns about possible or anticipated—but not yet proven—injury to authors are beyond this Court's limited powers to address under the Tunney Act. As the D.C. Circuit stated

in *United States v. Microsoft,* "[while] the district court may inquire into whether a decree will result in any positive injury to third parties, see 15 U.S.C. § 16(e)(2) (1988), in the absence of such injury, it should not reject an otherwise adequate remedy simply because a third party claims it could be better treated." 56 F.3d 1448, 1461 n. 9.

d. *Reasonableness of proposed remedies*

The proposed final judgment does not "make a mockery of judicial power."

The final judgment presented by the parties has been signed and accompanies this memorandum.